[Filed March 7th, 1887.]

JOHN CASSIDA v. OREGON RAILWAY & NAVIGATION CO.

RAILROADS—DUTY OF TRAINMEN.—The fact that persons are liable to be upon a railroad track at a particular locality where a train is to pass, if known to the managers of the train, or if they have reasonable grounds to expect it, whether such persons are there rightfully or wrongfully, would impose a duty of watchfulness upon them they would not ordinarily be under.

SAME—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.—In an action against a railroad company for injuries causing the death of the plaintiff's intestate, who was a child about seven years old, it was error to reject evidence offered by the plaintiff to prove that persons had been in the habit of traveling up and down the railroad track at the place where the accident occurred, for several years prior to its occurrence. This was a circumstance which the jury had a right to consider, in connection with other evidence upon the question of negligence.

SAME—CONTRIBUUTORY NEGLIGENCE IN CHILDREN.—The negligence which will preclude a plaintiff from recovering in such a case, is a failure to exercise that degree of care and forethought which a prudent person might be expected to exercise under similar circumstances, and the general rule is, that the same degree of prudence cannot be expected of children as of grown persons ; hence, evidence that the intestate, being frightened by cattle, sought refuge upon the railroad trestle to make her escape, is admissible to rebut a charge of contributory negligence.

WASCO COUNTY.    Plaintiff appeals.    Reversed, and new trial ordered.

*A. S. Bennett*, for Appellant.

*Rufus Mallory*, for Respondent.

THAYER, J.—The appellant, as administrator of the estate of Mary Elizabeth Cassida, deceased, commenced an action against the respondent for causing her death. He alleged in his complaint that the respondent's agents and employees, while running one of its trains of cars and locomotives upon its railroad which runs between Portland and The Dalles, and points beyond, carelessly and negligently, and with gross and wanton negligence, ran its said locomotive upon and over appellant's said intestate. The respondent denied any negligence upon its part and alleged that the occurence happened in consequence of the negligence of the deceased, her parents, and those having her in charge. There is no material difference between the respective counsel as to the general facts of the case. The respondent's brief contains the following statement :

The respondent owns and operates a railroad from Portland to The Dalles. There is a station on the line of its road between those points called Cascade Locks, at which trains stop in passing each way. At the station is a platform one hundred feet or more in length, by the side of the railroad. At a point on

the railroad 600 or 700 feet east of the station, a trestle commences, which extends 150 or 200 feet east over a ravine which is 18 to 20 feet deep from the top of the trestle.

From the west end of this trestle the grade of the road is up each way 36 feet to the mile, and extends at that grade easterly something over a mile, and as far, and perhaps farther, west. The track is straight, running east from the station to and over the trestle, and about 1100 or 1200 feet beyond, where it bends to the right around an elevated point, and passes out of sight of one at either end of the trestle.   About three-fourths of a mile east from the station, and out of sight round the curve, is a whistling-post. The up grade extends east past the whistling-post, one-fourth or one half of a mile.

A train of cars moving west on the railroad reaches this 36-foot down-grade to the west about one-fourth to one-half mile east of the whistling-post, from which point it will run to the station without steam; and its speed down the grade is regulated and controlled by the brakes.

A county road crosses the railroad track, about 70 or 80 feet west of the west end of the trestle.

On the day of the accident, June 5th, 1884, the regular freight train, consisting of a locomotive, seventeen loaded cars and a caboose, was moving west on the respondent's road, and was in charge of a conductor, two brakemen, an engineer and fireman.

The train hands all swear that the engineer sounded the whistle at the whistling-post.   That the train was moving down the grade without steam under control of the brakes, at its usual speed of 10 or 12 miles per hour.   The engineer swears that,  as the locomotive came around the curve to the straight track leading over the trestle to the station, he discovered three persons on the track near the east end of the trestle, and apparently in the act of crossing the railroad ; but in an instant afterwards, he discovered that they had started to cross the trestle. He instantly called for brakes, reversed his engine, turning the drive wheel backwards, and applying sand to the track, sounded an alarm with the whistle.   The brakemen and conductor ap-

plied the brakes as rapidly as possible, doing all in their power
to stop the train.    The persons on the track were three daugh-
ters of John Cassida, the appellant, aged respectively seven,
nine and eleven years.  The children ran along the trestle ahead
of the train to within ten or twelve feet of the west end, when
the elder two girls let go the youngest and jumped off, the
youngest lying down on a tie with her right arm around the
track and her head upon it, where she was struck by the wheels
of the locomotive, and her head severed from her body, the
train passing on about its length from where she was killed be-
fore it could be stopped.    The distance from where the chil-
dren could be first seen by the engineer to where they were at
that time was about 900 or 1,000 feet, and from where they
could be seen to the place where the child was struck was, say,
1,200 feet.    The engineer and conductor, and other witnesses
accustomed to handling trains, swore that such a train, moving
at the rate of ten or twelve miles an hour on such a grade,
cannot be stopped in less than 2,000 or 2,500 feet, and that it
was not possible to have stopped this train, in the distance
from where the child was killed to the point where the train
passed around the curve, where she could be seen by the en-
gineer.

Witnesses for plaintiff swore that they did not hear the
whistle sound at the whistling post, nor did they hear the bell
ring as the locomotive came down the grade.    They also swore
that the wind was blowing a smart gale up stream, or toward
the east ; that the train was running at an unusually rapid
speed ; that it was several minutes ahead of schedule time ;
that the brakemen were not at their posts ; that the engineer
did not call for brakes as soon as the children could be seen by
him.    All these things were contradicted by the witnesses for
the respondent, except that the engineer admits that he did
not call for brakes at the instant he first saw the children, be-
cause he thought them in the act of crossing the track ; but
testifies that he did call for brakes, reverse the engine, and do
all in his power to stop the train as soon as he saw the children
were starting upon the trestle."

And the following is contained in that of the appellants: "On the 5th day of June, 1884, said Mary E. Cassida, a child of seven years, with her two sisters of nine and twelve years, respectively, was upon the east end of a bridge or trestle upon defendant's railroad track, running from The Dalles, and other points further up the country, to Portland.

"Some distance east of where the killing occurred there is a curve in the road, and a high bluff which shuts off the view of the track. On the day of the killing, the freight train which did the injury came around this curve running west and in the direction of the children.

"It seems from the evidence that the children did not see the train when it first came around the curve, but as soon as they did see it they commenced running towards the west end of the bridge (away from the train), and had nearly reached the end of the bridge (within nine ties) when the train overtook them. The two older children jumped from or through the bridge and escaped, but the little one was struck by the cow-catcher and her head severed from her body.

"The place where the accident occurred was in the edge of a little village of five or six families (Upper Cascades), and about 80 feet east from a public crossing. The point on the curve where the engine first came in sight was 1,120 feet east from where the child was killed, and the engine passed on 600 feet beyond the child before it stopped."

The appellant's counsel offered to prove that persons, including children, had been in the habit of traveling up and down and across the railroad track, at the place where the accident occurred, for four years prior to its occurrence. The evidence was objected to by the respondent's counsel, and the court excluded it, to which ruling the appellant's counsel saved an exception.

The appellant's counsel also offered to show the following: "That the child, for the death of which this action is brought, had been out gathering strawberries with its two older sisters, just previous to the accident, and was returning home. That on the way home the children saw some cattle close to or in the road

by the side of the railroad trestle upon which the injury took place, which had previously chased them, and which they believed to be dangerous ; and went upon the track and undertook to cross the trestle in order to avoid such cattle, but were overtaken by the train, and the injury took place."

The respondent's counsel objected to the evidence as immaterial, and the objection was sustained, and an exception saved to the ruling.

The court instructed the jury in said cause that " the railroad track at the place where the child was killed not being a crossing or any part of a public highway, was private property. It was not built to be walked upon. It was built for other purposes, and the children had no legal right to be walking across the track or across the trestle; but it does not follow that because they were unlawfully there the defendant's employees could run them down, but, on the contrary, they should use every reasonable endeavor to prevent doing so, *when they discovered the children upon the bridge or trestle*, if they had reasonable grounds to believe that they the children, could not extricate themselves from the position in which they were before the train would be upon them."

Also that: " The term ' wantonly,' when applied to the commission of an act, implies that the act was done with a purpose to injure or destroy without cause, and without reference to any particular person."

Also that: " Travelers approaching a track must use their senses vigilantly and look both ways, *and this precaution is required of children who have the maturity and capacity which justify their being allowed to go abroad unattended*, or to take charge of infants who have not attained such maturity and capacity ; and a failure upon the part of such a person to take such precaution will prevent a recovery for an injury they may sustain, unless the carelessness or negligence on the part of the defendant or its employees amounts to such gross or wanton negligence as amounts to *wanton* misconduct."

The appellant's counsel excepted to each of these instructions, and requested the court to give the following instruction to the jury :

" The employees of a railroad company are bound to use ordinary care in running their trains, in order to avoid injuries to persons who may be upon their tracks; and if they fail to use such care, and a person is thereby injured, without fault or negligence upon his own part, the company is liable for such injury." Which the court refused, and to which said counsel excepted.

The first question to be considered is the refusal to admit the testimony in regard to the habit of people in traveling upon the railroad track at the place of casualty. The offer to show that such was the fact included also an offer to show that the engineer who had charge of the running of the train at the time of the accident had knowledge of it; that he had found different persons upon the track about the place where it occurred prior thereto. The circuit court evidently regarded such a practice as highly improper, and that its continuance did not legalize it. It is undoubtedly true that persons have no business to travel upon a railroad track, except in crossing it; and when guilty of such imprudence, and they receive an injury which it contributes to, cannot recover on account of it. Nor do I think that railroad employees, when running trains, are expected to anticipate that persons will be found upon the track where they have no right to be, or are required to maintain a lookout in order to discover whether or not any one is exposing himself to such danger; though it unquestionably is their duty when they discover persons in such situations, to use their best endeavors to avoid injuring them. The claims of humanity dictate such duty. And should they have reasonable grounds to apprehend that persons might, at some particular place upon the line of the road, be upon the track where the train must pass, they would be under an obligation to exercise due caution. I think the fact that persons were liable to be on a railroad track at a particuliar locality where the train is to pass, if known to the managers of the train, or they have reasonable grounds to expect it, whether such persons are there rightfully or wrongfully, would impose a duty upon them they would not ordinarily be under in the conduct of the

business. Generally, in running a locomotive and cars along a railroad track, through the country, the probability of finding persons upon the track would be very slight; but in approaching a populous locality it would be greater, and more care should be exercised upon the part of those engaged in operating the train; and the requirement would be the same in approaching a place where people were known to congregate upon the track, or were known to be upon it. It would not follow that a person injured in such a case would have a right of action against the railroad company for the injury. If the evidence disclosed that the party injured was, at the time it occurred, upon the track at his own volition, and was in possession of his faculties, he would have no right of action, upon the well-known principle that a party cannot recover for his own wrong. He would be compelled to establish that his being upon the track was not the result of negligence, or that the employees of the company acted maliciously in the affair, or were guilty of such gross negligence as would amount to gross criminality.

The appellant offered the evidence to sustain the charge of negligence made against the company, and I am inclined to think that it was competent. It was a circumstance which the jury had a right to consider, in connection with the other evidence upon that point. (*Townley* v. *The Chicago, Mil. & St. Paul. Co.*, 53 Wis. 634.) The negligence of the company, however, would not have been sufficient to entitle to a recovery if negligence could be imputed to the deceased for being upon the track; hence the question arises as to whether the circumstances of the deceased being a child, and being, as might be supposed, upon the track to escape vicious cattle, relieved her from that imputation. Negligence in such a case is a failure to exercise that degree of care and forethought which a prudent person might be expected to exercise under similar circumstances. (*Hurst* v. *Burnside*, 12 Or. 520.) The general rule is, that a child can be expected to use discretion only in respect to its years; and the same prudence should not be required of children as of grown persons. (*McGovern* v. *N.*

*Y. C. & H. R. R. Co.*, 67 N. Y. 417.) And the circumstances, of any person being upon a railroad track in such a case ought, it seems to me, to be the subject of inquiry, when the proof offered tends to show that he was justified in being there, or would relieve him from the imputation of negligence.

In *Eckert* v. *The Long Island Railroad Company*, 43 N. Y. 502, the party injured, seeing a little child upon the railroad track of the defendant's road, attempted to rescue it from a train of cars which was swiftly approaching it, and saved the child but lost his own life; and it was held that the law had so high a regard for human life that it would not impute negligence to an effort to preserve it, unless made under circumstances constituting rashness in the judgment of prudent persons. Judges Allen and Folger dissented, but I believe the opinion of the majority of the court to be correct. Judge Grover, who delivered it, says : " Negligence implies some act of commission or omission wrongful in itself. Under the circumstances in which the deceased was placed, it was not wrongful in him to make every effort in his power to rescue the child, compatible with a reasonable regard for his own safety."

The case under consideration is more favorable to the appellant than that one. There the danger was immediate and imminent, and the person who exposed himself to it was a man of mature age. Besides, as was said in the dissenting opinion : " He was not compelled to take any action to avoid a peril and harm to himself from the negligent or wrongful act of the defendant, or the agents in charge of the train." But here were three little girls, who, being frightened by cattle, sought refuge upon the railroad track. They may have been so alarmed and terrified by their fears that they did not look for any train of cars, but seized with a panic, ran down the trestle work in order to make their escape. It was not necessarily any act " of commission or omission wrongful in itself." Their apprehensions of danger from the cattle may not have been well founded, but could have been as potent as though they had been real. It seems to me that the offer to show the

circumstances which led to the course they pursued in the case should have been admitted in proof, and submitted to the consideration of the jury. ˙ It must be recollected that this proof was offered in reply to the plea of contributory negligence, which, strictly, is matter in avoidance. Had the respondent confessed that it had been negligent in the affair, and then set up contributory negligence upon the part of the appellant's intestate, there would be no mistaking the nature of it. The respondent would have said, in effect: " It is true, my agents and servants did carelessly and negligently run the train, did not blow the whistle at the whistling-post; allowed it to get under too great a headway at the curve ; and did not look soon enough to discover whether the track was clear or not; yet the appellant ought not to recover for the injury to the child, as she was negligent in being upon the track, and her negligence contributed to the injury." The appellant could then have said in reply, that his intestate was not guilty of negligence in being upon the track; that she, in company with her two sisters, all of whom were but children, having only childish judgment and possessing childish fears, resorted to the track under the circumstances set out in the offer. The issue so presented would have been virtually the same as that made in the case, except the allegations as to the respondent's negligence are denied, instead of confessed.

Under this view, the instructions of the court were inapplicable to the case. They would doubtless have fitted if the intestate had been a person of more mature judgment, and been upon the track at her own volition ; or could have justly been chargeable with carelessness for being there.

The respondent's counsel contended at the hearing that the judgment ought not to be reversed in any event, as the facts showed that another trial must necessarily result the same. If we could say that with certainty, I should be in favor of adopting that course ; but it is so much a question of fact that I do not think it proper to do so. The facts ruled out by the court ought to have been admitted in proof, and the jury allowed to consider them, in accordance with the principles herein speci-

fied. It might have changed the result if that course had been pursued. This court does not undertake to say that there was any negligence upon the part of the respondent's agents or employees in operating the train of cars, or that the jury would have so found; but that in view of the circumstances the appellant, as a matter of law, had a right to have the evidence offered upon the matters referred to admitted and considered with the other proofs.

The judgment appealed from must therefore be reversed, and a new trial granted.