WILLIAM HAAS v. STATE OF OHIO.

**1. EFFECT OF TWO JUDGES PRESIDING DURING THE TRIAL OF A CRIMINAL CASE IN THE COMMON PLEAS COURT.**

The fact that on the trial of a criminal case in the court and room presided over by a judge of the court of common pleas, who had been assigned by the judges of the court of common pleas in joint session to hold court in said room, said judge invites another judge of the same court to sit with him upon the bench in the trial of such case, and he does so, and they together hear and agree upon the decision which should be rendered, and it is entered in due form upon the journal of the proper court, does not make such action erroneous or prejudicial to the defendant, and particularly so when no objection whatever was made to this until the filing of the motion for a new trial.

**2. DUTY OF THE COURT IN THE TRIAL OF A CASE INVOLVING THE LIFE OR LIBERTY OF A PERSON.**

In a case involving the life or liberty of a person, courts should be astute and vigilant in seeing that the accused has a fair and impartial trial. And it is better to err in favor of a defendant than against him in this regard. But it is the further duty of courts to see that a speedy trial also be had, in so far as may consist with the rights of the defendant, and a large discretion as to this is necessarily conferred upon the trial court, and its exercise should be upheld and maintained unless manifestly abused.

**3. QUESTION OF DELIBERATION AND PREMEDITATION.**

Where a person has purposely, maliciously and with premeditation committed one great crime against the person of another, and afterwards purposely, maliciously and with premeditation takes the life of such person with the hope thereby of covering up his crime and escaping punishment: *Held,* that such person will not be deemed unable to deliberate on his act, for the reason that he is laboring under the excitement naturally brought about by his own unprovoked conduct.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

In this case the counsel for the plaintiff in error claims that in three particulars there is error in the proceedings of the court of common pleas

in the trial of this case, which resulted in his conviction of the crime of murder in the first degree, all of which were to his prejudice, and either of which would require a reversal of the judgment, viz.:

*First*—That the court which heard and decided the case was improperly constituted, it being composed of two of the judges of the court of common pleas of this county.

*Second*—That the trial court would not allow time to the defendant or his counsel to prepare for the trial; and

*Third*—That the finding of the court that the defendant, who had pleaded guilty generally to the indictment which charged him with murder in the first degree, was guilty of that grade of homicide, was against the weight of evidence.

We consider these questions in the order named. It appears, from a certified copy of an entry of the court of common pleas, made in joint session at the October term of said court, 1896, viz.: on October 5, 1896, and brought into the record by a bill of exceptions, allowed by the court on the overruling of the motion for a new trial, that the judges of said court were assigned to hold court in the different rooms for said October term, and that Judge Evans was assigned to hold court in Room No. 6, and Judge Wilson in Room No. 4. And it further appears from the affidavit of Mr. Wright, attorney for the defendant below, which was also filed on the hearing of a motion for a new trial, that Judge Wilson sat upon the bench with Judge Evans at the hearing of said cause; that the two judges heard the evidence together, and consulted together as to points of law raised upon said trial; that said judges consulted together in determining the grade of homicide, and each rendered a separate opinion finding said defendant guilty of murder in the first degree.

It does not appear from the transcript of the record filed in this case whether the trial occurred in Room 6, to which Judge Evans had been assigned, or in some other room. The heading of this certified transcript is as follows:

"Pleas, at a separate session of the court of common pleas in and for the first judicial district, begun and held at the courthouse, in the city of Cincinnati, county of Hamilton, state of Ohio, in the term of October, A. D. 1896, before the Hon Charles Evans and Moses F. Wilson, two of the judges of said court."

But we suppose this is the statement of the clerk alone, and, if incorrect, can be corrected, and under the circumstances probably should be. We understand it to be conceded that the trial was held in Room 6, to which Judge Evans had been assigned, he presiding therein, and that all of the proceedings in the case, until after the plea of guilty had been entered by the defendant, had been before him alone. And that after this, Judge Wilson sat with Judge Evans as stated in the affidavit of Mr. Wright. Indeed, the motion for a new trial, so far as this point is concerned, is predicated as stated in Room 6, thus:

"That the court erred in requesting and permitting the Hon. Moses F. Wilson to sit upon the bench and assist the court in the trial of said case."

The question presented, then, if it be conceded that there was no order made by the judges of the court of common pleas in joint session assigning Judge Wilson to sit in Room 6 with Judge Evans in the trial of this case (and there is nothing on the record to show that this was not done), is this: Does the fact that on the trial of a criminal case, like

this, in the court and room presided over by a judge of the court of common pleas who had been assigned by the judges of the court of common pleas, in joint session to hold court in said room, said judge invites another judge of the same court to sit with him upon the bench in the trial of such case, and he does so, and they together hear and agree upon the decision which should be rendered, and it is entered in due form upon the journal of the proper court, make such action erroneous as to the defendant? For, doubtless, this is exactly what was done here, for the bill of exceptions is signed by Judge Evans alone, and if the court was really and lawfully held by the two judges, the bill of exceptions, which is absolutely necessary to raise the question presented in the case, being signed by Judge Evans alone, is not properly signed or authenticated, and cannot be regarded in the case.

Section 464, Revised Statutes, makes this provision as to the powers and duties of the judges of the court of common pleas of this county:

"The judges of the court of that county may sit separately or otherwise, as they at any time deem expedient, and may prescribe the mode of keeping and authenticating the minutes of the proceedings had before them, or any of them. And may, at the beginning of each term, and at all times when necessary thereafter, classify and distribute among themselves for trial and determination the business pending in the court as they deem most convenient to the public interests."

Under this section it seems that the judges in joint session would have had power to assign Judges Evans and Wilson to hear and determine this case; and, as has been said, it does not appear whether they did or not do so. But if it was done, we cannot say that under this law two of the judges, by agreement between themselves, have not the right to hear and determine one or more causes submitted to them jointly. But in this case we think that it was not erroneous or prejudicial to the defendant for Judge Evans, the presiding judge, to invite Judge Wilson, one of his colleagues, to sit with and advise with him in the decision of the case and of the questions arising upon the hearing, and to do as was done here. And particularly so, when no objection whatever was made to this until the filing of the motion for a new trial.

*Second*—Did the court err in requesting the defendant to proceed with the hearing of the case on the 5th of November, 1896, against his objection or that of his counsel?

The indictment was returned at the July term, 1896, on July 9. On the 15th of July, the defendant, by his attorney, Mr. Roney, filed a motion to quash it. This was overruled, and on July 20, his attorney filed a demurrer thereto, which, on the same day, was overruled also, and the defendant then being arraigned and asked to plead to the indictment, stood mute, and a plea of "not guilty" was ordered by the court to be entered for him. At the following October term, to-wit: on October 12, the court, finding that the defendant was in indigent circumstances, assigned Mr. Roney, an attorney at law, to defend him. And on the same day the defendant, in open court, by leave of the court, withdrew his plea of not guilty, and, as it appears from the journal entry, being fully advised by his counsel, and being cautioned by the court, pleaded guilty as charged in the indictment.

On the 5th of November, 1896, the question as to the degree of homicide came on for hearing on the day assigned by the court and counsel, and, it appearing that the counsel of the defendant had

abandoned the assignment, the court appointed J. Rogers Wright, an attorney of this bar, to further defend Haas. The bill of exceptions shows, by the statement of Mr. Wright, that he was so appointed at 11:00 A. M. of said day, and the case was called for trial at 2:00 P. M. At that time, as stated in the stenographer's notes of what took place, Mr. Wright stated to the court that, from his conversation with the defendant, he thought the case was not in shape to be tried. That his defense would necessarily be insanity; that no experts had been summoned, and that there was no one present to testify on this point for the defendant, and that it seemed to be risky to proceed without more preparation. That the matter was in the hands of the court, and that he desired it to be fully informed of the position. In answer to this the court suggested that the defense of insanity went to the guilt or innocence of the defendant, and that he had already pleaded guilty. And that if the defense of insanity was to be interposed, the proper way would be to withdraw the plea of guilty and go to a jury and let them determine the question of sanity. In answer to this Mr. Wright stated to the court that he had only been able to make a short examination of what the defense should be, or whether it could be made out, and that as defendant, under the advice of counsel, had already pleaded guilty, he was not willing to ask the court for leave to withdraw that plea; that he could not probably support it, and that he still thought it risky to proceed. Thereupon the court said: "I think we had better proceed now," and counsel for defendant excepted, and the case was commenced.

Thereupon, for two days, the state offered evidence and then rested, and the court, for the purpose of allowing evidence to be had for the defendant, adjourned the further hearing of the case for one week, at the end of which time the hearing was resumed and testimony offered on behalf of the defendant.

If a formal application for a continuance had been made and filed and supported by evidence, which was not the case, other than the oral statement of defendant's counsel to the court, we are unable to see that the trial court in any way abused the discretion which the law gives. Of course, in a case involving the life or liberty of a person, courts should be astute and vigilant in seeing that he has a fair and impartial trial. And it is better to err in favor of a defendant than against him in this regard. But it is the further duty of courts to see that a speedy trial also be had, in so far as may consist with the rights of the defendant, and a large discretion as to this is necessarily conferred upon the trial court, and its exercise should be upheld and maintained unless manifestly abused. We see nothing in this case to show that such was the case here, or that the defendant was prejudiced by the action of the court in requiring the trial to proceed on the day fixed therefor. In effect, an offer was made to counsel to allow the defendant to withdraw his plea of guilty, which would necessarily have given him the delay desired, but this was declined. After the evidence on the part of the state was offered, ample time was given the defendant to procure any testimony he desired to offer. *Third*—The claim is made that the trial court erred in finding that the defendant was guilty of murder in the first degree; that is, that he purposely, and of deliberate and premeditated malice, killed Mrs. Brater.

As we understand it there is no substantial disagreement as to the facts in this case, as disclosed by the evidence in the bill of exceptions

between counsel for defendant and for the state. It is perfectly clear from the testimony given by the defendant himself that in the early morning of the day named, when no one was in or about the house but the defendant and this unfortunate woman, he brutally ravished her; that is, had sexual intercourse with her, forcibly and against her will. That having accomplished his purpose, as she lay helpless before him, she told him that she would inform her husband, when he returned, of what he had done. That he at once started down stairs, and went and got a razor belonging to the husband, the defendant knowing where he kept it. He testifies that he formed the purpose in his mind to kill the woman while he was going down stairs, and that from the time he formed this purpose, and while searching for the weapon, and while he was returning up stairs, after he had got into the room where she was, he still thought of killing her, by cutting her with a razor, and as soon as he found it he went up stairs and struck her with it, thereby killing her. He also testifies to the disposition of the body of the dead woman, and the efforts made to burn the building and thereby destroy the body of the deceased and the evidence of his guilt. This is a brief but substantially correct statement of his evidence as to the manner in which the crime was committed.

In addition to this there was evidence by Mr. Jackson, a detective officer of the Cincinnati police force, as to a confession made by the defendant to him after his arrest, and after he was brought from Hamilton to Cincinnati, as follows:

"I asked him when he made up his mind to kill Mrs. Brater. He and I had talked about it on the way to the station house, down stairs, and in the wagon, and he said he had made up his mind the night before. He had been reading in the newspapers about the Pearl Bryan case, and he concluded to assault her, rape her and kill her."

And in the testimony of the defendant given before the coroner, after describing his assault upon her, and her resistance, he said that after he left her he went down stairs to get Mr. Brater's razor, and went back and cut her with it.

On this and the other evidence in the case, not materially detracting from or contradicting the facts I have stated, the claim of the counsel for the plaintiff in error is that the court was not justified in finding that this killing was of deliberate malice on the part of the defendant. That it is apparent, from the facts shown, that it was not done while the defendant was in cool blood, but, on the contrary, while in the heat of passion, and not able to deliberate—or, at the very least, that it is not shown with that certainty which the law requires in such case that it was deliberate. And this claim is made while counsel concede that it is shown that the defendant killed Mrs. Brater purposely and with premeditated malice. But it is urged that it does no appear that he had deliberated upon it coolly, but that the killing was done in the heat of passion, and while he was so excited from what had already taken place that he was incapable of deliberation.

The law, as we understand, in tenderness to human weakness, does, in determining the grade of homicide, take into consideration the condition of the mind of the person charged therewith shortly before and at the time of the commission of the act which brought about the death. And under the terms of the statute which defines the crime of murder in

the first degree to be a killing purposely, and of deliberate and premeditated malice, if it should appear on the trial that the act was committed in the heat of blood, or on a sudden quarrel, or when, by reason of intoxication or other like cause, it is shown that the defendant was not in a condition of mind in which he could deliberate or premeditate, in such case the defendant could not properly be convicted of the capital offense. See *Pigman* v. *State*, 14 O., 555; *Nichols* v. *State*, 8 O. S., 435.

In the case of *State* v. *Thompson*, Wright's Rep., 623, Judge Wright, in his charge to the jury, said:

"If the prisoner meditated upon the purpose to kill, deliberated upon it, and coolly, or when only heated by voluntary intoxication, formed the design to kill, at any time before he struck the blow, the law holds the act deliberate and premeditated. It so holds, also, where there has been provocation and consequent heated blood, if from lapse of time or other cause, passion has subsided and reason resumed her empire before the offense was perpetrated. These matters should be judged of reasonably, according to the lights of experience. If the provocation were slight and the retort greatly beyond, it weighs but little in conducing to the belief that the ordinarily deliberate operations of the mind were interrupted by that cause. So, if considerable time elapses between the provocation and the revenge sought, as it is not usual for the passions to continue excited or the blood heated so long, it is unreasonable to suppose the excitement and hot blood, the cause of the subsequent act, without the deliberate aid of the will."

And it is clear, from the decisions in our state, that if the deliberation and premeditation are present at all, it is not a question of moment how shortly before the killing they were present.

If, therefore, this case stood solely on the evidence given by the defendant himself in court, and before the coroner, we would be unable to say that the finding of the trial court that the killing by the defendant was with deliberate malice, was contrary to the weight of the evidence. In this case there was no sudden quarrel between these parties. The defendant clearly made a malicious assault upon an innocent and unsuspecting woman. There was no provocation whatever on her part. It is true that he met with resistance in his unprovoked assault, and doubtless he was excited by what had taken place and the knowledge that he had committed a great crime, and would be exposed to punishment, and was not, in all probability, in his ordinary cool state of mind. But that he was so excited or unbalanced that he was not able to premeditate the crime of murder, and deliberate upon it, does not appear, and his own evidence does not show it. In our judgment it would be dangerous to hold and so administer the law, that a person who is shown to have purposely, maliciously and with premeditation committed one great crime against the person of another, and afterwards purposely, maliciously and with premeditation takes the life of the person with the hope thereby of covering up his crime and escaping punishment, should, for the reason that he is laboring under the excitement naturally brought about by his own unprovoked conduct on this account, be deemed unable to deliberate on his act.

But in this case the court was not confined to the evidence of the defendant alone. There was other testimony, which, if believed by the court to be true—and we see no reason to disbelieve it—clearly showed a previous deliberation and premeditation, both of the rape and the mur-

der on the part of the defendant. Jackson had testified, as before stated, that the defendant had confessed to him, that the night before he committed the acts, he had concluded to assault her, rape her and kill her. If this be so, what other finding could properly have been made on the evidence?

The judgment of the court of common pleas will be affirmed.

*J. Rogers Wright,* for Plaintiff in Error.

*Prosecuting Attorney,* Contra.