# OCTOBER TERM, 1904.[*]

## HAMPEL v. DETROIT, GRAND RAPIDS & WESTERN RAILROAD CO.

1. NEGLIGENCE — IMPUTED NEGLIGENCE — INFANTS—RAILROADS — ACCIDENT AT CROSSING.

The negligence of the driver of a vehicle is not imputable to an infant riding with him at his invitation so as to preclude recovery for her negligent killing by a railroad company at a crossing.

2. RAILROADS—ACCIDENT AT CROSSING—GROSS NEGLIGENCE.

Evidence in an action against a railroad company for injuries arising from a crossing accident examined, and *held* that nothing was presented from which the company could be charged with such gross negligence as to make the negligence of the driver of the vehicle immaterial.

Error to Mecosta; Palmer, J. Submitted April 12, 1904. (Docket No. 40.) Decided October 18, 1904.

Case by Julius Hampel, administrator of the estate of Amelia Drager, deceased, against the Detroit, Grand Rapids & Western Railroad Company, for the alleged negligent killing of plaintiff's intestate. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Joseph Barton* and *Walter W. Drew*, for appellant.

*Frederick W. Stevens* (*Charles McPherson*, of counsel), for appellee.

HOOKER, J. August 23, 1899, Amelia Drager, who would have been 14 years old, had she lived until the 3d day of the following October, was killed by one of defend-

ant's trains at a highway crossing. In December, 1901, this suit was commenced. No witnesses were sworn on the part of the defendant. After all the witnesses were sworn on the part of the plaintiff, the circuit judge directed a verdict in favor of defendant. The case is brought here by writ of error.

The accident occurred near Beghold's mill, which stands about 75 feet north of the highway, and 40 feet east of the railway track. At this point the railway track runs north and south, and the highway east and west. On the south of the highway, and west of the track, was a large pile of wood, partly on the railroad right of way and partly in the highway. It was 6 to 8 feet high, and obscured the view of the train coming from the south when one was traveling the highway from the west, though one could see the smoke from an approaching locomotive. The girl and her sister lived a half mile west of the crossing. Nine months in the year she attended school. To reach the schoolhouse, she crossed the railroad track. The school building was east of the track. Upon the day of the accident she and her sister were going east from home, carrying a bundle. John Fenning, who was driving a single horse before a buggy, overtook them, and invited them to ride. They accepted the invitation. The record discloses that, just before getting to the wood pile, Fenning looked for a train, and, seeing none, continued to travel toward the crossing, paying no further attention to the railroad, or to the trains that might be approaching. This was doubtless because, as he expressed it, he did not know any train was due. When the horse got within a few feet of the track, a train appeared, the horse turned to the left and reared, and the wheel of the buggy struck a log which projected into the highway about four feet. The inmates of the buggy were thrown toward the train, and Miss Drager was killed.

It is claimed no signals were given for the crossing. The testimony of the witnesses for the plaintiff is contradictory upon that point, one of them swearing she heard

the whistle; and, were it not for other questions in the case, the testimony as to whether the signals were given should have been submitted to the jury as a question of fact. An important question in the case is whether Mr. Fenning was negligent in approaching the crossing as he did.

It would not profit any one to set out the testimony in detail, but the proof is overwhelming that he was so negligent, that, if he was suing for damages, it would have been the duty of the judge to direct a verdict in favor of the defendant.. See *Lake Shore, etc., R. Co.* v. *Miller*, 25 Mich. 274, and notes, and the many cases cited there; *Freeman* v. *Railway Co.*, 74 Mich. 86; *Grostick* v. *Railroad Co.*, 90 Mich. 594; *Gardner* v. *Railroad Co.*, 97 Mich. 240, and the cases there cited; *Stewart* v. *Railroad Co.*, 119 Mich. 91; *Britton* v. *Railroad Co.*, 122 Mich. 359.

The next question of importance is whether the negligence of the driver is imputable to the plaintiff's intestate. Plaintiff's counsel concede that, had she been an adult, it would be, but earnestly and ably contend that, as she was an infant, she should not be charged with the negligence of the driver. It is urged that the doctrine of negligence rests upon the assumption that the relation of principal and agent or master and servant exists between the passenger and driver, and that, as an infant can be neither principal nor master, the doctrine cannot apply to an infant. The deceased was an infant 13 years old, in a carriage by invitation of its driver, through whose negligence, and without her fault, she was killed. Had she been an adult, his negligence would have been imputable to her, upon the fiction that he was her agent, under the doctrine of *Thorogood* v. *Bryan*, 8 C. B. 115, which is recognized as authority in this State. See *Mullen* v. *City of Owosso*, 100 Mich. 103. But this infant lacked the capacity to make him her agent, while there is not the least substance of a claim that either party supposed that such relation existed as a matter of fact.

It is said that the case is covered by *Apsey* v. *Rail-*

*road Co.*, 83 Mich. 432, 440. The question of imputed negligence is not discussed in that case. It may be inferred that it was not raised. The decision in *Mullen* v. *City of Owosso* was carefully limited to cases of adults, by the writer of the opinion, who participated in the decision of the *Apsey Case*. In some jurisdictions the negligence of parents is imputable to children. Whatever the rule in this State may be as to children of very tender years, having no capacity to care for themselves, that doctrine is not sustained as to infants generally. See *Fye* v. *Chapin*, 121 Mich. 679, citing *Shippy* v. *Village of Au Sable*, 85 Mich. 280, and *Mullen* v. *Owosso*, supra. Here no question of the parents' negligence is raised, as in the *Apsey Case;* but, if a child is chargeable with its parents' negligence, does it follow that he should be held responsible for that of strangers at whose invitation he rides? The doctrine is at variance with the overwhelming weight of authority here and in England. If the case of *Apsey* v. *Railroad Co.*, supra, must be considered an authority for the proposition that the negligence of a driver is imputable to an infant, it should be overruled.

It is said the defendant was guilty of gross negligence, and the question of contributory negligence becomes immaterial. There is nothing in the record to indicate the case comes within the holdings of this court as to what constituted gross negligence. See *Schindler* v. *Railway Co.*, 87 Mich. 411; *Buckley* v. *Railroad Co.*, 119 Mich. 583; *Labarge* v. *Railroad Co.*, 134 Mich. 139.

Judgment is reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.