Submitted on briefs October 14, reversed November 24, 1925.

ALLEN FISHER, A MINOR, BY BERTHA FISHER, HIS GUARDIAN AD LITEM, *v.* R. C. BURRELL AND CORA BURRELL, HIS WIFE, AND ALBERT WOOLRIDGE.

(241 Pac. 40.)

**Explosives—Care Required as to Children.**

1. One keeping explosives in place to which children may have access will, since such articles are naturally attractive to children, be held to corresponding degree of care to protect them from in-

---

1. Liability for injury to children from explosives left accessible to them, see notes in 14 L. R. A. (N. S.) 586; 24 L. R. A. (N. S.) 1257; 42 L. R. A. (N. S.) 840; L. R. A. 1917A, 1295. See, also, 11 R. C. L. 664.

jury, and where place of storage or use is readily accessible to children, corresponding care must be exercised, although they may not have been in the habit of frequenting the place, nor need liability rest upon doctrine of attractive nuisance, but no liability arises for injuries to children where explosives have been guarded with reasonable care, or left where there was no reason to anticipate meddling.

### Explosives—Highest Degree of Care Required in Handling Explosives.

2. Duty of person handling dynamite to exercise highest care not to leave dynamite or caps where children or other persons may be exposed to injury never ceases, and one handling dynamite is liable for all natural or probable consequences which flow from any breach of that duty.

### Negligence—Care as to Children Measured by Age.

3. Where duty exists to take care with respect to safety of children of tender years, their very age must be taken into account, so that what might be reasonable care with respect to safety of adults, who are capable of looking out for themselves, might not be reasonable care but gross negligence with respect to children, and as to young children care required to be exercised is measured by maturity and capacity of child.

### Negligence—Degree of Care Required as to Child.

4. Where children of tender years may reasonably be expected to come in contact with operations carried on by instrumentalities which are inherently dangerous or likely to injure such children, a greater degree of care is required as to a young child than is demanded toward an adult.

### Explosives—Negligence as to Children not Avoided by Warning.

5. Liability of one negligent in handling dynamite, or dynamite caps, in such a manner cannot be avoided by fact that warning has been given to young children.

### Negligence—Care Required as to Trespasser.

6. One cannot escape liability for negligence merely because person injured was a trespasser, where before commission of negligent act trespasser's presence was known or ought to have been known, and by use of ordinary care defendant might have avoided the injury.

### Explosives—Care Required in Use of Explosives.

7. One whose business requires use of explosives must use such care and caution in handling and guarding them as careful and prudent persons whose business requires use of explosives ordinarily exercise.

### Explosives—Child Injured by Dynamite Cap not Required to Show He was not Trespasser.

8. In action for damages for personal injuries to child from explosion of dynamite cap picked up on defendants' premises, plaintiff to recover was not required to show that he was on premises

---

4. Liability of owner for injury to trespassing children from dangerous substances on premises, see note in 5 Ann. Cas. 503.

on express invitation of defendants and not as trespasser, where he was in habit of visiting defendants' premises and they were aware of his presence.

**Explosives—Instruction on Attractiveness of Dynamite Cap Injuring Child Held Inapplicable.**

9.   In action for injuries to child from explosion of dynamite cap picked up on defendants' premises, instruction that it would not be sufficient to entitle plaintiff to recover that cap was attractive, or that plaintiff's instinct would prompt him to meddle with it, but that it must be so situated as to attract him from some safe place, and that danger of it so luring him must be obvious, *held* inapplicable.

**Explosives—Complaint for Child's Injuries by Dynamite Cap Held Sufficient.**

10.   In action for damages for personal injuries to child resulting from explosion of dynamite cap picked up on defendants' premises, complaint *held* sufficient to cover any allurement of plaintiff to the premises by reason of excavation proceedings thereon, and an implied invitation of plaintiff to visit the same, and to admit of any proof that plaintiff was rightfully or naturally around the premises at the time and would reasonably be expected by defendants to be there.

Appeal and Error, 4 **C. J.**, p. 649, n. 36.
Explosives, 25 **C. J.**, p. 186, n. 60, p. 187, n. 61, 62, 63, 67, p. 203, n. 84, p. 211, n. 15.
Negligence, 29 **Cyc.**, p. 429, n. 89, p. 430, n. 91, p. 443, n. 8, p. 454, n. 90, p. 553, n. 81.
Trial, 38 **Cyc.**, p. 1604, n. 65, p. 1615, n. 21.

From Multnomah: T. E. J. DUFFY, Judge.

In Banc.

This is an action for damages on account of personal injuries that resulted to the plaintiff from the explosion of a dynamite fulminating cap. Judgment went for defendants and plaintiff appeals.

The plaintiff was a boy about nine years old. At the time of the accident he was living at the home of his parents at Hillsdale, a suburb of Portland, Oregon. The defendants, Burrell, were adjacent neighbors. There was a beaten path between the two places and the wire fence between was fixed for easy passage. There was a well on the premises of Fishers, but the Burrells had no water on their premises.

They employed defendant Woolridge to gid a well for them on their lot of about two acres. The premises of the plaintiff's parents consisted of about one half an acre.

The negligence is alleged as follows:

"On said 3rd day of June, 1920, at about one o'clock in the afternoon, while plaintiff was on the premises of his parents, and while defendants were engaged in the work of excavating for said well, defendants called to plaintiff and asked plaintiff to bring them a pail of water; plaintiff thereupon complied with this request and carried water from his own home to the premises of the Burrells and delivered the water to defendants.

"While the defendants were thus engaged in the work of excavating for a well, they carelessly and negligently kept and placed and caused and permitted to be kept and placed upon the premises where they were working, a quantity of dangerous explosives, to-wit: a number of dynamite fulminating caps and carelessly, recklessly and negligently left said dangerous explosive sticks unguarded, unprotected and exposed on said premises.

"Defendants well knew and appreciated, at all times material to this action, that said caps were highly dangerous and exploded easily and were naturally attractive and enticing to children, and that children, including plaintiff, would naturally be attracted and enticed to handling and playing with them, and defendants well knew and appreciated that a child would naturally and in the ordinary course of events, see and find such dynamite caps and would be attracted and enticed into playing with and handling and manipulating said caps so as to cause them to explode."

That plaintiff found one of said dangerous explosive caps which had been carelessly permitted to lie on the ground, carried it to the premises of his parents where it exploded, causing injuries to him.

Defendants, R. C. Burrell and Cora Burrell, his wife, filed an answer admitting the ownership of the premises, in Mrs. Burrell; that Woolridge was engaged in constructing a well, and admitted the fact of the plaintiff's injury, denying the other allegations of the complaint.

These defendants further pleaded, in effect, that the defendant, Bert Woolridge, was engaged as an independent contractor to dig the well. Further answering these defendants aver that Woolridge in carrying on the work used certain explosives for blasting, to wit: fuse caps which were kept in a box in an earthen jar, and the earthen jar placed about three or four feet from the ground in a garage on said premises, and the door of said garage was closed and securely fastened so that any person could not enter without forcibly opening the door.

The plaintiff had been repeatedly warned by defendants that the explosives were in the garage and not to enter the same or to come upon the premises where the garage was located, or where the well was being dug; that if plaintiff procured an explosive upon the premises of these defendants by which he was injured, he came into the possession of the same wrongfully and unlawfully, and without invitation, contrary to the will and instruction of these defendants, by entering upon the premises and wrongfully and stealthily entering the garage, by wrongfully removing the fastening and taking the cap out of the box on the shelf.

For a third further and separate answer these defendants aver, in effect, that on the day of the accident, the mother of the boy was warned by the defendant, Cora Burrell, that she was going away from home for the afternoon; that her husband was

116 Or.—21

sick and confined to the house, and directed the mother of plaintiff to keep him off the premises during her absence; that the mother of plaintiff carelessly and negligently permitted the plaintiff to enter the premises and the garage and take the fuse cap, if it was taken.

These defendants further aver that the accident was wholly due and brought about by the negligence and carelessness of the plaintiff through no fault and negligence of the defendants.

The defendant, Woolridge, answered to much the same effect as the other defendants, except as to the allegations respecting an independant contractor; averring that plaintiff was repeatedly warned by this defendant in regaru to the explosives; that the negligence on the part of the mother in permitting the plaintiff to enter the premises was imputed to plaintiff.

Replies were filed putting in issue the new matters of the answer, except so far as consistent with the complaint.

The testimony, on the part of plaintiff, tended to support the main allegations of plaintiff's complaint and to show that while the well digging was under way the boy went frequently upon the Burrell premises. He went there on the third day of June, 1920. According to his statement, defendant R. C. Burrell called him to bring a pail of water from the Fisher well. On this occasion, as he was returning home from the Burrell house, he picked up, on the Burrell premises, near the well, a dynamite fulminating cap. He had never seen such a cap. He thought it was a whistle. He carried it to a shed of his own home intending to hammer it into the shape of a ring.

The explosion that followed the first blow of the hammer maimed his right hand.        REVERSED.

For appellant there was a brief over the names of *Mr. John F. Logan, Mr. J. J. Fitzgerald* and *Mr. Fred Heilig.*

For respondents there was a brief over the name of *Messrs, Collier, Collier & Bernard.*

BEAN, J.—The plaintiff assigns eleven errors in the instruction of the court to the jury. The plaintiff complains that the trial court ignored the allegations of an attractive nuisance and instructed the jury not to return a verdict for plaintiff, unless plaintiff proved an express invitation to enter on the premises.

The defendants contended that the plaintiff was a trespasser upon the premises, the care of which devolved upon the defendants, and they owed him no duty, except that of not inflicting any wanton or reckless injury. Citing and relying upon, among others, the cases of *Riggle* v. *Lens,* 71 Or. 125, 128 (142 Pac. 346, Ann. Cas. 1916C, 1083, L. R. A. 1915A, 150), and *Haynes* v. *Oregon etc. Co.,* 77 Or. 236, 244 (150 Pac. 286).

After reciting and explaining the issues of the case, the court charged the jury in part as follows:

" * * If the plaintiff recovers at all in this case, it must be based upon the particular charge of negligence alleged in the complaint, to wit: by leaving exposed on said premises a dynamite fulminating cap and that while it was so exposed, the plaintiff was invited by the defendants to come upon said premises where said danger exists, and if you find that the defendants left exposed upon said premises fulminating caps of dynamite as alleged in their com-

plaint within itself would not be sufficient for you to find a verdict for the plaintiff, even though you found that the plaintiff was on said premises to pick said fulminating cap of dynamite up and carried it away and exploded it and was injured thereby, unless you further find that the plaintiff was on said premises by the express invitation of the defendants."

The court also instructed the jury:

"I instruct you, Gentlemen of the Jury, that a land owner is not liable for damages to an infant trespasser for injuries arising from an unguarded, open and unconcealed danger on his land. * * The liability in such cases is no different from the liability due an adult."

And further:

" * * You are further instructed, Gentlemen of the Jury, that if the defendants objected to the plaintiff coming upon said premises while said work was being carried on, and did everything that was reasonably possible for them to do under the circumstances to prevent this child from trespassing upon said premises, then there would be no invitation express or implied."

The law relating to explosives, which seem to be in a class by themselves, is laid down in 25 C. J., page 186, Section 11, in substance as follows:

1. One keeping or storing explosives in a place to which children may have access will, since such articles are naturally attractive to children, be held to a corresponding degree to protect them from injury, and a failure to exercise such care will impose liability. Where the place of storage or use is readily accessible to the children, corresponding care must be exercised, although they may not have been in the habit of frequenting the place, nor need liability rest upon the doctrine of attractive nuisance. But no

liability arises for injuries to children where the explosives have been guarded with reasonable care, or left where there was no reason to anticipate meddling.

In 25 C. J., page 186, note 60, we read the language of Chief Justice Cooley, in the opinion in *Powers* v. *Harlow*, 53 Mich. 513 (19 N. W. 257, 51 Am. Rep. 154);

"Children wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with the duty of care and caution toward them must calculate upon this, and take precautions accordingly. If they leave exposed to observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

19 L. R. A. (N. S.), pp. 1127, 1128, note; *Mattson* v. *Minnesota & N. W. R. Co.*, 95 Minn. 477 (104 N. W. 443, 111 Am. St. Rep. 483, 5 Ann. Cas. 498, 70 L. R. A. 503); *Akin* v. *Bradley, etc.*, 48 Wash. 97 (92 Pac. 903, 14 L. R. A. (N. S.) 586, note, 24 L. R. A. (N. S.) 1258, note); *Folsom* v. *DeVork*, 61 Okl. 75 (160 Pac. 64, L. R. A. 1917A, 1290, and note at page 1295); *Clark* v. *I. E. Dupont De Nemours Powder Co.*, 94 Kan. 268 (146 Pac. 320, Ann. Cas. 1917B, 340, L. R. A. 1915E, 479); *Barnett* v. *Cliffside Mills*, 167 N. C. 576 (83 S. E. 826, 827); *Powers* v. *Harlow*, 53 Mich. 515 (19 N. W. 257, 51 Am. Rep. 154).

2. Persons handling dynamite must exercise the highest care not to leave the dynamite or caps where children or other persons may be exposed to injury. That duty never ceases. Such person or owner handling dynamite is liable for all the natural and probable consequences which flow from any breach of

that duty: 25 C. J., p. 187, note D citing *Hamlin v. Gano* (Miss.), 76 South. 633. See, also, *McTighe v. Johnson,* 114 Miss. 862 (75 South. 600), and cases above cited.

3. Where the duty exists to take care with respect to the safety of children of tender years, their very age must be taken into account, so that what might be reasonable care with respect to the safety of adults, who are capable to some extent of looking out for themselves, might not be reasonable care but gross negligence with respect to children. As to young children the care required to be exercised is measured by the maturity and capacity of the child: 7 Am. & Eng. Ency. of Law (2 ed.), 441, and cases there cited, *Cassida* v. *Oregon Ry. & N. Co.,* 14 Or. 551–558 (13 Pac. 438) ; *Lawrence* v. *P. R. L. & P. Co.,* 91 Or. 559–566 (179 Pac. 485) ; *Friedman* v. *Snare & Triest Co.,* 71 N. J. L. 605 (61 Atl. 401, 108 Am. St. Rep. 764, 2 Ann. Cas. 497, 70 L. R. A. 147) ; *Rohloff* v. *Fair Haven & W. R. R. Co.,* 76 Conn. 689 (58 Atl. 5–8) ; *Union Pac. Ry. Co.* v. *McDonald,* 152 U. S. 262–277 (38 L. Ed. 434, 14 Sup. Ct. Rep. 619) ; *Powers* v. *Harlow,* 53 Mich. 515 (19 N. W. 257, 51 Am. Rep. 154) ; *Mattson* v. *Minnesota & N. W. Ry. Co., supra; Barnett* v. *Cliffside Mills, supra; Dahl* v. *Valley Dredg. Co.,* 125 Minn. 90 (145 N. W. 796, 52 L. R. A. (N. S.) 1173) ; 2 Thompson on Neg., § 1806.

4. Children of tender years are endowed by their Maker with childish instincts. Man should not ignore such fact. He owes to society a duty to reasonably protect the life and limb of such infants on all occasions where such children may reasonably be expected to come in contact with, or in proximity to, the operations carried on by means of instrumentalities which are inherently dangerous, or likely

to injure such children.   Under such circumstances a greater degree of care is required with respect to a young child than is demanded toward an adult.

5. The liability of one negligent in handling dynamite, or dynamite caps, in such a manner cannot be avoided by the fact that warning has been given to young children: *Miller* v. *Chandler,* 168 Ky. 606 (182 S. W. 833).  See, also, *Hobbs* v. *Blanchard & Sons Co.,* 75 N. H. 73 (70 Atl. 1082, 18 L. R. A. (N. S.) 939) ; *Juntti* v. *Oliver Min. Co.,* 119 Minn. 518 (138 N. W. 673, 42 L. R. A. (N. S.) 840, and note) ; *Molin* v. *Wisconsin L. & L. Co.,* 177 Mich. 524 (143 N. W. 624, 48 L. R. A. (N. S.) 877, and note).

On page 187 of 25 C. J., note 67, we read:

"A landlord who permitted his tenant to use a tool house outside the leased premises and who had actual knowledge that a son of the tenant, eight and one-half years old, was able to and frequently did go upon a loft in the tool house, did not exercise ordinary care in storing dynamite and dynamite caps in paper sacks on such loft, and was not relieved of liability for injuries sustained by the boy from the explosion of a dynamite cap taken by him from such sacks by the fact that he warned the boy of the danger and told him that the dynamite and caps might kill him": *Miller* v. *Chandler,* 168 Ky. 606 (182 S. W. 833) ; *Mattson* v. *Minnesota & N. W. R. Co.,* 95 Minn. 477, 487 (104 N. W. 443, 111 Am. St. Rep. 483, 5 Ann. Cas. 498, 70 L. R. A. 503) ; *Railroad Co.* v. *Stout,* 17 Wall. 657 (21 L. Ed. 745).

In *Mattson* v. *Minnesota & N. W. R. Co., supra,* at page 487, it is said:

"There is nothing so attractive to young boys as articles of an explosive nature, and the greater the volume of sound that may be produced therefrom the greater the attraction.  As compared with an ordinary turntable, dynamite is vastly more attractive, and far more dangerous.  Young children are incapable of comprehending the dangers in handling

or exploding the same, and their natural instincts urge them into experiments with it whenever it comes within their reach. In view of these considerations, the rule of law imposed upon him who possesses such dangerous articles should be more exacting than in the case of a turntable; * * ."

In *Powers* v. *Harlow*, 53 Mich. 607, 19 N. W. 257 (51 Am. Rep. 154), it appeared that defendant kept on his premises, in an exposed place, over which a boy of tender years who was injured was accustomed to pass, certain dangerous explosives. The boy discovered them, took one of them, and exploded it, seriously injuring his person. The defendant was held liable in an action of negligence for injuries to the boy. In the opinion of that case, Judge COOLEY used the language, which seems pertinent to the facts in this case. We quote:

"The moving about of the children upon the land, where they were at liberty to go, while they were not actually employed, was as much an incident to their being there as is the loitering or playing by children outside the traveled part of the highway as they go upon it to school or upon errands. Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution toward them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken. * * In this case a shed in which a dangerous explosive was stored was left only partly inclosed, and its structure and location were such as naturally to invite the entrance of children, either for play or for shelter from sun and rain."

In *Nelson* v. *McLellan,* 31 Wash. 208 (71 Pac. 747, 96 Am. St. Rep. 902, 60 L. R. A. 793), it appeared that defendant placed several sticks of dynamite in a box upon a vacant lot, in the vicinity where he was engaged in a public improvement under contract with the municipal authorities, and where boys were in the habit of playing, without securely covering the same, and he was held liable for injuries to plaintiff, a boy of tender years, who found the same and exploded one of the sticks. See *Stendal* v. *Boyd,* 73 Minn. 53 (75 N. W. 735, 72 Am. St. Rep. 597, 42 L. R. A. 288).

It is said in 4 Current Law, 778, that by weight of modern authority, negligence of a parent or custodian is not imputable to a child *non sui juris,* so as to bar an action brought on its behalf, and the authorities in support of the statement are there cited.

Bishop, in his work on Noncontract Law (Section 582), says that the doctrine of imputed negligence, whereby an infant loses his suit, "not only where he is negligent himself, but where his father, grandmother, or mother's maid is negligent, is as flatly in conflict with the established system of the common law as anything possible to be suggested." We refer to Beach on Contrib. Neg. (3 ed.), § 127 et seq., 2 Jaggard on Torts, 985; 7 Am. & Eng. Ency. of Law, (2 ed.), 448 et seq.; *Berry* v. *Lake Erie etc. R. Co.* (C. C.), 70 Fed. 679; note to *Hampel* v. *Detroit,* 138 Mich. 1 (100 N. W. 1002, 110 Am. St. Rep. 278, 298). In *Lanza* v. *La Grande Quarry Co.,* 124 Iowa, 659 (100 N. W. 488), it is held that care required of persons whose business requires the use of dynamite is greater than that required with respect to the use of less dangerous explosives. See *Makins* v. *Piggott,* 29 Can. Supreme Court, 188.

6, 7. A person cannot escape liability for negligence merely because the person was a trespasser, where before the commission of the negligent act the presence of the trespasser was known to him, or ought to have been known, and by the use of ordinary care the defendant might have avoided the injury: 29 Cyc. 443 (II). One whose business requires the use of explosives must use such care and caution in handling and guarding them as careful and prudent persons whose business requires the use of explosives ordinarily exercise: *Lanza* v. *La Grande, supra;* 25 C. J., p. 187, note 64. See, also, 19 Cyc., p. 9, and note; 29 Cyc. 454.

8. The trial court in about thirteen places, in its charge to the jury, called their attention to the requirements that in order for plaintiff to recover he must show that he was on the premises by the express invitation of the defendants and not as a trespasser. The substance of the rule applied by the learned judge in the charge to the jury might apply in such cases as *Riggle* v. *Lens, supra,* where a child fell into the Byers mill-race in the City of Pendleton and was drowned, and *Haynes* v. *O. W. R. & N. Co., supra,* which related to a cave on or near a railroad right of way which some boys entered to escape a shower and remained for a time at play, when the bank fell entombing and injuring the plaintiff, a boy; and to cases involving injury caused by a minor falling into a pond of water, like the case of *Stendal* v. *Boyd, supra.* The rule embraced in the charge to the jury in the present case is not applicable to the facts in the case relating to the using and guarding of dynamite caps in respect to a child who is in the habit of or is known to be likely to play upon the premises where such explosives are kept and used.

The testimony tended to show that the plaintiff boy had for a long time immediately prior to the accident been in the habit of visiting the premises of the Burrells and playing around near where the well was dug; that each of the defendants was aware of the plaintiff's frequenting the premises; that the danger to the boy by being in proximity to the excavation of the well was known to them, as it had been discussed by the defendants.

It was indicated that for some time Mrs. Burrell had been attached to the boy and had him there in her company quite often; that he frequently did errands for her, going to a neighbor's; that on the day of the accident Mr. Burrell requested the boy to bring a pail of water and that at another time the boy had brought water for the workmen on the well. From the testimony the jury might reasonably conclude that the boy was permitted by the defendants to play on the premises, and that he had been attracted thereto by the blasting operations and that the dynamite fulminating cap was attractive to and excited the curiosity of the boy when he obtained it. The charge did not leave any room for the jury to take into consideration the natural allurement to children by the blasting operation, carried on upon the premises, which on account of the sound produced, if not otherwise, would naturally be attractive to a child with a bent for investigation.

In *O'Leary* v. *Brook Elev. Co.*, 7 N. D. 554 (75 N. W. 919, 41 L. R. A. 677, 680), Mr. Justice BARTHOLOMEW, referring to dangerous machinery, recorded the following language:

"They have for their foundation the assumption that a defendant land owner must know that children will follow their childish instincts and inclinations, and

that they are without capacity to clearly discriminate between things that are dangerous and things that are not dangerous; and, therefore, if he leave upon his premises a dangerous piece of machinery unguarded and fully exposed, and in a position where it will probably be seen by children, and of a character that would naturally attract and entice children, he must anticipate that children will go around and upon it; and he is therefore bound to use ordinary care to protect these unconscious trespassers from being unnecessarily injured by such dangerous machinery."

In Ray, Negligence of Imposed Duties, Personal, page 32:

"It is said that one owes no duty to an intruder or trespasser except not intentionally to harm him. Is this true as to a young child known to be in danger of being injured? Is there not an active duty owing to protect the helpless child from known danger on one's own land? * * * If men may be misled in their judgment by your act, you must take measures to warn them or to avoid injuring them by proper care. If children from their known childish instincts and curiosity may be led into danger, such care is due them also."

In *Barnett* v. *Cliffside Mills,* 167 N. C. 576 (83 S. E. 826, 827), an action for injuries to a boy eleven years of age from the explosion of a dynamite cap left lying on the ground, or in an uncovered box near, where the defendant was blasting in a well, the following contained in the charge to the jury was approved:

"One who maintains dangerous instrumentalities or appliances on inclosed premises, of a nature likely to attract children at play, or permits dangerous conditions to exist, while not liable to an adult under those circumstances, is liable to a child so injured,

though a trespasser at the time the injuries were received."

*Wood* v. *McCabe*, 151 N. C. 459 (66 S. E. 434), is authority for the proposition that:

"All courts and writers agree that the degree of care required of persons using such dangerous instrumentalities as dynamite in their business is of the highest, and what might be reasonable care in respect to grown persons of experience would be negligence as applied to youth and children."

In *Brittingham* v. *Stadiem*, 151 N. C. 302 (66 S. E. 130), the court quotes with approval from *Mattson* v. *R. R. Co.*, *supra*, as follows:

"The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article."

And in *Robinson* v. *Manufacturing Co.*, 165 N. C. 497 (81 S. E. 681), the Chief Justice says:

"Dynamite is often used, and is harmless if not tampered with. But it would surely be negligence to leave it lying on the floor where any ignorant or thoughtless person might cause it to explode with fatal consequences to his coemployee."

In cases involving kindred questions which have come before this court, it has followed the usual trend of the authorities above cited.

In *Hill* v. *Tualatin Academy et al.*, 61 Or. 190 (121 Pac. 901), an action against an officer of a charitable institution for injuries caused by a gopher gun set on the grounds of the institution pursuant to his order, it was held that a person in possession of

land who commits or omits any act thereon which endangers those who have a license to pass over the premises, is liable for any resulting injury.

*Burroughs* v. *P. T. & T. Co.*, 109 Or. 404 (220 Pac. 152), was a case where defendant placed abandoned poles upon vacant property not its own and used by children as a playground. Plaintiff, a six year old child playing about the poles, was injured. It was held that the child was not a trespasser upon defendant's property and the child being injured by the rolling over of a telephone pole, about which he was playing, and which was used by children as a playground, was held sufficient to submit the question of the defendant's negligence to the jury. In that case Mr. Justice BROWN quoted with approval the language of Mr. Justice COOLEY in the case of *Powers* v. *Harlow, supra.*

9. The court instructed the jury, in effect, that it would not suffice that the dynamite cap, from which the injury resulted, was attractive or such that the instinct of the plaintiff would prompt him to meddle with it, but it must be so situated as to allure and attract him from some safe place and that the danger of it so luring him must be obvious.

It can hardly be possible that a dynamite cap lying on the ground would entice a boy on to the premises or be seen for any considerable distance. The attractiveness to a child of such an explosive would naturally consist in a prompting or tempting him to take it or pick it up when seen. The charge in this respect was not applicable. It may be that the blasting operations would tend to attract a young boy to the premises; that is about as far as the direct blasting cuts any figure in the case, except as such work necessitated the use of the explosives. There is

no negligence alleged in the complaint as we understand it, except with respect to the care of the explosives.

10. The facts set up in the complaint we deem sufficient to cover any allurement of the plaintiff to the premises, by reason of the excavation proceedings, and also an implied invitation to the boy to visit the same, as well as to admit of any proof that the child was rightfully or naturally around the home of the defendants at the time, and would reasonably be expected by defendants to be there; and the charge to the jury in this regard should not have been confined to an express invitation. Some portions of the charge, perhaps, covered the points alluded to but were plainly overcome or annulled by the instructions in relation to an express invitation.

The defendant Burrell pleaded that the work of digging the well was being done by Woolridge as an independent contractor. The testimony upon this phase of the case was conflicting and we cannot say that the jury decided this case as to the Burrells, upon this point. If the Burrells did not have the care or control of the explosives and did not direct the manner of keeping or using them, and were not responsible for the placing of them by Woolridge, we think the charge given in relation to an independent contractor covered the question. There is no direct averment by plaintiff that the explosives were negligently stored in the garage of Burrels where the defendants assert that the boy got the dynamite cap, if anywhere. Therefore, the testimony upon this point need not be noticed.

The charge of the court to the jury was tantamount to a direction of a verdict for defendants. For the

reason above suggested, the judgment of the trial court is reversed and the cause remanded for a new trial.   ·   ˙               REVERSED AND REMANDED.

Mr. Justice RAND concurs in the result.