This is an action to recover damages for personal injury caused by the explosion of a dynamite cap. The material parts of the evidence are stated in the opinion.
The defendant moved to dismiss the action because of the pendency of another action for the same cause in Rutherford County, in which a judgment of nonsuit had been entered. The motion was overruled, and the defendant excepted.
There was also a motion for judgment of nonsuit, which was overruled, and defendant excepted.
His Honor charged the jury, among other things, as follows:
1. "Now, if you find by the greater weight of this evidence that the defendant was constructing a well there, and that they left lying around on the ground, as testified to by plaintiff and some of the witnesses, these highly dangerous explosives, dynamite caps, the court charges you that it is a dangerous instrumentality, that is, if the evidence disclosed this, that they left them there, loose, without any inclosure, no fence around there, nothing to warn the plaintiff of their presence, and that it was *Page 634 
a public place, and that the plaintiff was attracted there by the presence of other children; seeing it lying there and not knowing what it was and its dangerous nature, he took it home, as he contends, and was injured, as he contends — if you find all of that by the greater weight of the evidence, then the court charges you that would be negligence for which the defendant would be liable; and if you find that that negligence was the proximate cause of the plaintiff's injury, then you will answer the first issue `Yes.'" Defendant excepted.
2. "And in this case, if you find that after using these dynamite caps, defendants, or their employees, went away and left them on the ground, as testified to by the plaintiff, without any inclosure or warning to plaintiff, that would be a negligent act; and if plaintiff, not knowing of its dangerous nature, in the innocence of youth, took it to his home and broke it with a hammer and it exploded and injured him, if you find there was an injury, and that it was the proximate cause upon the facts outlined by the greater weight of the evidence, then you will answer the first issue `Yes.'" Defendant excepted.
(578) 3. "One who maintains dangerous instrumentalities or appliances on inclosed premises, of a nature likely to attract children at play, or permits dangerous conditions to exist, while not liable to an adult under those circumstances, is liable to a child so injured, though a trespasser at the time the injuries were received." Defendant excepted.
4. "Defendant contends that the defendant's witness testified he was present there with him; plaintiff contends that this is not true, and that he never had any such conversation. It is left you to decide which is correct." Defendant excepted.
There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.
We will consider together the motion for judgment of nonsuit and the exceptions to the instructions to the jury, as both involve the contentions of the defendant that there is no evidence (1) that the dynamite caps were left on the ground by its employees, (2) that the place where the caps were found is a public place, (3) that the place or caps were likely to attract children; and that if there is evidence of these facts, they and the other circumstances relied on by the plaintiff were not sufficient to carry the case to the jury. *Page 635 
We will first reproduce parts of the evidence introduced by the plaintiff, and then undertake to apply it.
The plaintiff testified: "In the fall of 1907 I lived at Cliffside, N.C. I was 11 years old then and living with my papa and mama. They are here now. They were then living at Cliffside. In November, along about that time, one of my eyes was put plumb out and the other affected so I could hardly see out of it. It was put out with a dynamite cap which I got in front of the post-office at Cliffside, at a well. Mama had sent me for the mail from the post-office, and I saw some little boys and girls playing over the other side. There were some plank in the well. Some of them were standing looking into it. There were a few plank over the well. Nobody was working at the well at that time. I looked into the well, and there was a box sitting there and some dynamite caps lying down there. That is what they said it was. I picked up one and took it home with me. Two or three were on the ground, brass looking, sorter like cartridge hulls. I thought it was an electric wire about 6 inches long in it. I did not know what it was. Where I found the cap is a public place 15 to 20 steps from the post-office and about 100 yards from the cotton mills and about the same distance from the coal chute. About that time I think there were seven or eight hundred hands working in the mill. The mill hands traveled it back and forth (579) to the mill. This mill was on the premises of the Cliffside Mills. I carried the dynamite cap home and took it out where we had been playing, about 40 steps from the house. I exploded it with a hammer, and it put my eye out. The right eye went plumb out; have not been able to see out of it a bit since. The other eye was hurt. I did not know what it was when it exploded."
J. H. Leverette: "I remember when Timmons Barnett got his eye hurt at Cliffside. I was working at the mill there, some of the time. I think they had been blasting at the well at the super's house, Mr. Packard. I do not know whether they were blasting anywhere else on the premises or not. I was helping at the windlass. Kelley Moore, who worked for the company, had me employed; he is outside boss, I think. The company paid me. They used dynamite and dynamite caps to do the blasting. This is the well Timmons Barnett testified to, down by the post-office. I have seen children playing about there."
G. F. Sisk: "I heard blasting at the Packard well. I saw dynamite caps in a box, while they were working at the well. Look like a sort of fuse, with a little tin cap on it. That cap was off a little piece, sorter under the edge, where had laid a plank off the well, to go down, 2 or 4 feet from the well." *Page 636 
Charley Gardner: "I remember Timmons Barnett getting hurt. It was in November, I think, 1907. I saw some dynamite caps in a box at the Packard well before the day the boy was hurt. There was no fence or anything around the well when I passed there. There were children playing close there when I passed that day. That was somewhere in the time of a week before the boy was hurt. I had heard some blasting, and there had been blasting there. There was nobody at the top of the well, and I did not think there was anybody in the well."
Ed. Wood: "I saw the Packard well before Timmons Barnett was hurt; they had been blasting at the well when I was along there. I saw some dynamite there. The dynamite was in a box uncovered, 3 or 4 feet from the well."
Z. D. Barnett: "The Packard well was 8 or 10 steps from the path that went down across to the house, and 40 to 50 yards to the company store, 50 or 75 yards from the main entrance to the mill. I saw children around there frequently. I know they played there when they taught school in the building at the well. Six to seven hundred people employed in the mill. I saw dynamite caps in a box under the floor near the well, under the Packard house, in an open box, 4 to 5 feet from the well. I was down there two or three times, and saw them all the time I was down there."
(580) Mr. Kelley Moore: "I am outside man for the Cliffside Mills.
The dynamite at Cliffside is in my charge. I have charge of the magazine. In the Packard well, I think the first shot they made they used caps, and they claim one did not go off. I gave them three dynamite and three caps, the first shot that was made. They shot part of them. Two of them went off, and they bored out the other one. That cap was taken back to the magazine. I have been working at Cliffside fourteen years. I was the first man that went there. I look over the premises when the work is completed; that is part of my duty to look after what is wasted, or left, and take any dynamite caps lying around there. I observe to see what is left. We moved all of the dirt. It covered the ground from the house, back for 20 feet. Part of that dirt was put in front of the old company store. Nitroglycerine is what furnished the power."
The well referred to was being dug for use in connection with the house which the defendant was building for its superintendent.
This evidence was accepted by the jury, and it tends to prove:
(1) That the well was being dug by the defendant.
(2) That dynamite was used for that purpose.
(3) That the dynamite was kept in an uncovered box.
(4) That dynamite caps were left on the ground by the well. *Page 637 
(5) That the well was not inclosed.
(6) That it was within 8 or 10 steps of a much used path, within 75 yards of the main entrance of the mill of defendant, in which six or seven hundred people worked, within 40 or 50 yards of the store of the defendant, and within 15 or 20 steps of the post-office.
(7) That the place had been formerly a playground for children; that children were seen there frequently, and that on the day the plaintiff was injured he went to the well because he saw other children there.
As was said in Fitzgerald v. R. R., 141 N.C. 535: "It is very generally held that direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances, and it is well established that if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence. Thus, in Shearman and Redfield on Negligence, sec. 58, it is said: `The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover unless the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default; but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or (581) not. To hold otherwise would be to deny the value of circumstantial evidence.'"
When this principle is applied and the circumstances are considered in connection with the fact that no evidence was introduced of the use of dynamite except by the employees of the defendant, the jury were justified in finding that the dynamite was left by the employees on the ground or in an uncovered box at a place not inclosed and much used by the public, including children; and this would be negligence.
In Powers v. Harlow, 53 Mich. 507, Judge Cooley says: "Children, wherever they go, must be expected to act upon children's instincts and impulses; and others, who are chargeable with a duty of care and caution towards them, must calculate accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment, might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken." In this case it was held that the defendant was guilty of negligence, when it appeared that defendant kept on his premises over which the injured person, a boy, was in the habit of passing, *Page 638 
in an exposed place, certain dangerous explosives, which the boy discovered and exploded with serious injury to his person.
In Mattson v. Minnesota Ry. Co., 95 Minn. 477, Justice Brown says: "There is nothing so attractive to young boys as articles of an explosive nature, and the greater the volume of sound that may be produced the greater the attraction. As compared with ordinary turntable, dynamite is vastly more attractive. Young children are incapable of comprehending the dangers in handling or exploding the same, and their natural instincts urge them into experiments with it whenever it comes within their reach. The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost care must be exercised, respecting the care and custody of such instrumentalities, to guard against injury to others. The degree of care must be commensurate with the dangerous nature of the article, and is greater and more exacting as respects young children."
In Nelson v. McLellan, 31 Wn. 208, it appeared that defendant placed sticks of dynamite in a box upon a vacant lot, in the vicinity where he was engaged in a public improvement, under contract with the municipal authorities, and where boys were in the habit of playing, without securely covering the same, and he was held liable for injuries to plaintiff, a boy, who found the same and exploded one of the sticks.
In Makins v. Piggott, 29 Can. S.C., 188, defendants were constructing a railroad near an unused cemetery, and a boy of 15, while walking near by and through the cemetery, found some fulminating caps, (582) and, in ignorance of their dangerous quality, was injured by the explosion of one of them. The Court held that, while there was no direct evidence as to how the caps came to be in the cemetery, nevertheless, it would seem to be a fair inference, in the absence of circumstances leading to a different conclusion, to attribute the act of placing the defendant's caps upon the ground to those who alone were shown to have had the handling of them.
In Harriman v. Pittsburg R. R., 12 N.E. 451, defendant left an unexploded torpedo on its track at a place which had been used as a crossing. The torpedo was picked up by a boy of 9 years, and carried by him into a crowd of boys near by, and they attempted to open it. The torpedo exploded and plaintiff was injured, and it was held that negligence of company's servants was the proximate cause of injury, and that the act of the boy in carrying the torpedo from where it was found was but a contributing condition, which defendant's servants ought to have anticipated as a probable consequence of their negligent act or omission. *Page 639 
In Olson v. Home Investment Co., 27 L.R.A. (N.S.), 884, it was held that the act of boys in stealing or attempting to explode dynamite negligently left unguarded in an unlocked shanty on a vacant city lot is not such an intervening cause of injury to one of them by an explosion as will, as a matter of law, relieve the owner from liability for the injury, if the boys might have been found, from their age, experience, and knowledge of right and wrong, to have been governed by unreasoning and natural impulses.
In Wells v. Gallagher, 3 L.R.A. (N.S.), 762, a cartridge or bomb was swept by a janitor into an alley. A child picked it up and exploded it to his injury, and the Court says: "The law clearly implies a duty not to place or cause to be placed, or cause to remain, in the public highway a bomb or explosive capable of inflicting injury by being exploded. It is unimportant how long the bomb remained in the public alley, if it remained long enough to cause injury, and it is equally unimportant whether the plaintiff, a boy of 14 years of age, exploded the bomb in the public alley, where it is alleged to have been negligently placed, or whether he carried it to an adjacent yard and there exploded it. In either case the alleged injury is the proximate consequence of the alleged negligence."
We are not without authority in our own Court.
In Brittingham v. Stadiem, 151 N.C. 302, Justice Manning quotes with approval from Mattson v. R. R., supra: "The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The (583) degree of care must be commensurate with the dangerous character of the article"; and the same case is cited by Justice Brown in Woodv. McCabe, 151 N.C. 458, in support of the proposition that "All courts and writers agree that the degree of care required by persons using such dangerous instrumentalities as dynamite in their business is of the highest, and what might be reasonable care in respect to grown persons of experience would be negligence as applied to youth and children. 7 A. and E., 411; Mattson v. R. R., 111 Am. St., 487."
In Ferrell v. Cotton Mills, 157 N.C. 538, Justice Walker says: "InAkin v. Bradley, 92 P. 903, defendant had thrown some dynamite caps on a vacant lot in rear of its place of business. A path ran through this vacant lot, and school children used the path. Plaintiff was a boy of 11 years of ago. The Court said: `We think that when the respondent left these dangerous explosives by the wayside, where it knew that children, naturally attracted by such things, were constantly passing and *Page 640 
repassing and playing therewith, it must be held to have known that such children were liable to cause some of said caps to explode in a manner likely to cause them serious injury, and that the explosion of such a cap by a dry battery in the manner shown herein did not constitute an intervening cause that should relieve respondent from liability.' InStollery v. R. R., 90 N.E. 709, a boy of 10 years was killed, and his body found beside a conveyor operated by defendant on a vacant lot in a city. Held, `Under the decisions of this State, unguarded premises supplied with dangerous attractions to children are regarded as holding out an implied invitation to them, which will make the owner of the premises liable for injuries to them, even though the children be technically trespassers.' This case also holds: `The rule of law is, as already stated, that the proof of negligence on the part of the appellee's intestate, as well as all the other elements of the action charged in the declaration, may be established by circumstantial evidence.' The principle of the law of negligence laid down in the foregoing cases, as well as in others too numerous to cite, is both just and humane"; and in Robinson v. Mfg. Co.,165 N.C. 497, the Chief Justice said: "Dynamite is often used, and is harmless if not tampered with. But it would surely be negligence to leave it lying on the floor where any ignorant or thoughtless person might cause it to explode with fatal consequences to his coemployee."
The case of Briscoe v. Power Co., 148 N.C. 396, recognizes this principle, and the other authorities relied on by the defendant are not, we think, in point, except perhaps the case from Rhode Island, although it appeared in that case that the dynamite was in a tin box with a string around it, and this box was kept in a large tool chest.
(584) In Hughes v. R. R., 71 N. H., 279, and in Carter v. R. R., 19 S.C. 20, the injury was caused by the explosion of a torpedo placed on the track as a signal, and the party injured in the last case was a full-grown man, and in Chambers v. Coal and Railway Co., (Ala.)30 So. 170, the powder house, which it was alleged was negligently located, was 150 yards from the road and near a path seldom traveled.
We are, therefore, of opinion there was evidence of the facts referred to in the charge, and of negligence, which ought to have been submitted to the jury.
The plea of the pendency of the action in Rutherford County was properly overruled, because that action had been dismissed by judgment of nonsuit.Cook v. Cook, 159 N.C. 48; Brock v. Scott, 159 N.C. 513; 1 Corpus Juris, 60 and 94.
In Pettigrew v. McCoin, 165 N.C. 472, both actions were pending, and the only question involved was when the action should be tried. *Page 641 
Upon a review of the whole record, and after a careful examination of the briefs, which have been a great aid to us and from which we have taken most of the authorities we have quoted, we find
No error.
Cited: Karchanake v. Mfg. Co., 175 N.C. 442 (1cc); Rankin v. Oates,183 N.C. 524 (3j); Stevens v. Lumber Co., 186 N.C. 750 (1p); Richardson v.Libes, 188 N.C. 113 (1cc); Hight v. Harris, 188 N.C. 331 (3c); Campbellv. Laundry, 190 N.C. 653 (1c); Stephens v. Lumber Co., 191 N.X. 27, 28, 29, 32 (1d); Reed v. Mortgage Co., 207 N.C. 30 (3c); Luttrell v. MineralCo., 220 N.C. 790 (1d); Hedgepath v. Durham, 223 N.C. 824 (1d); Moore v.Moore, 224 N.C. 556 3d.