LESLIE RAYMOND KENNEDY, Appellant, v. INDEPENDENT QUARRY & CONSTRUCTION COMPANY.—291 S. W. 475.

Division One, February 16, 1927.

**1. DEMURRER: Inferences.** Upon a demurrer to the evidence plaintiff is entitled to every inference in his favor which may reasonably be drawn from the evidence.

**2. NEGLIGENCE: Dynamite Caps and Fuse: Found in Quarry: Inference to be Drawn.** The inference that may be reasonably drawn from a finding of dynamite caps and fuses in a shed at the bottom of defendant's quarry, where there is no evidence that any other person or company had used the quarry, is that they were placed there by defendant or its servants.

**3. ———: Explosives: Exceptional Care.** He who has in his possession or under his control instrumentalities exceptionally dangerous in character is bound to take exceptional precautions to prevent injury being done by them. The test of liability is the power of a prudent person to foresee injury, and that depends on the circumstances, including the nature of the instrumentalities, the time, the place and the status of the party injured; and in this case the place and age and status of the persons producing the injury are of primary importance.

**4. ———: ———: Causal Connection: Broken Chain.** In this case the question for decision is whether the acts of a mature boy served to break the chain of causation between defendant's negligent act and the injury to

plaintiff, a third party, and to relieve the defendant from the result of its negligence.

5. ————: **Dynamite Caps: Attractive Nusiance: Application.** The doctrine of the turn-table and attractive-nuisance cases is applied only to young children. It cannot be applied to a boy eighteen and a half years old, who discovered dynamite caps and a fuse in a tin box in a shed near the bottom of a deep quarry and put them in his pocket and carried them away for the purpose of having some fun with them, and who knew that the place was a quarry where blasting had been going on for a long time, knew something of the use of a fuse, and knew when he took them that he was appropriating something which belonged to another and which he had no right to take and "no business with."

6. ————: **Proximate Cause: Definition.** The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any new cause, produces the injury, and without which the injury would not have occurred.

7. ————: ————: **Trespasser: Dynamite Caps.** A plaintiff who had no part in taking the dynamite caps, negligently left in a quarry and taken by a mature boy eighteen and a half years of age, can in no sense be regarded as a trespasser; yet if the trespass and other acts of the boy who took them intervened between the negligent act of defendant and the injury to plaintiff, as independent and efficient causes in producing the injury, the defendant is not liable for the injury.

8. ————: **Dynamite Cap: Explosion: Injury to Third Party: Proximate Cause: Intervening Cause: Unusual Case.** Defendant owned and operated a quarry, in the midst of the city, 250 feet long and about 100 feet deep. In it was a pool of water in which young men and boys sometimes went swimming, reaching it by ladders which extended from ledge to ledge to the bottom. Close by the pool stood an old shed, open on two sides. On a Sunday morning Schneider, Kauffman and others went down the ladders, removed their clothes and went into the pool. Schneider left his clothes in the shed, and while dressing after his return from the pool, saw a tin box and on it a fuse fifteen or twenty inches long. The box was closed, but the lid was not fastened, and no warning sign was upon or about it. He removed the lid, and found in the box a number of dynamite caps, and put two of them and the piece of fuse in his pocket. After leaving the quarry he told Kauffman what he had found and showed him the caps and fuse, and Kauffman suggested that they hide them and have some fun with them. They took them some distance to a drug store, hid them in an awning, and went away. In the evening they took them from the awning and went to a vacant lot near by. Schneider wanted to light the fuse, but had no match, and Kauffman took it from him and lighted one end of it, and it smoldered or burnt slowly. About that time the plaintiff came up. He did not know what they had or what they were doing, and did not know what a dynamite cap was. While he stood within three feet of them, Kauffman put the lighted end of the fuse into the open end of a cap, for the purpose of extinguishing the fire, but the cap immediately exploded, and plaintiff received injuries to his eyes which made him practically blind. Schneider was eighteen and a half years of age. He had gone to school until he had reached the eighth grade and then for four years had been a manifest clerk for a railroad. He had heard of dynamite and blasting, and had seen motion pictures of men lighting fuses to set off bombs, and dynamite charges, but did not know what the caps were for. He knew that the place was a quarry, that blasting had gone on there, through there had not recently been any blasting. He knew when he took the caps and fuse, that he was taking something that did not belong to him and said he knew that he had "no business with them." Kauffman was twenty years of age, had been in school until he was fourteen, had then gone to work, later went to high

school two years, knew what dynamite was for, knew that dynamite was used in blasting, knew that the fuse in question was a dynamite fuse, but said he did not know that the cap was dangerous, and thought it was a safety device for extinguishing the fire of a lighted fuse. **Held, first,** that the doctrine of the turn-table and attractive-nuisance cases has no application to boys of such age and experience; **second,** cases holding that a child of tender years who takes dynamite caps under such circumstance is not a trespasser, and that such act of a child of tender years does not break the chain of causation between the negligent act and the injury, are not controlling; and, **third,** assuming that the leaving of the dynamite caps..and fuse in the shed under the facts stated was a negligent act, the acts of Schneider and Kauffman were intervening acts, between defendant's negligent act and plaintiff's injury, which were not reasonably to be anticipated, by defendant, and of a character which made defendant's original negligent act remote, and superseded it. The act of Schneider was not that of a child of tender age, or one of mere concurring negligence, but the act of a person nearing maturity, moving independently, and conscious of wrongdoing, and his act conjoining with that of Kauffman was an efficient intervening cause which defendant was not bound to anticipate, and bars plaintiff's right to recover for his injury.

Corpus Juris-Cyc. References: **Explosives,** 25 C. J., Section 11, p. 187, n. 67 New; p. 188, n. 69; Section 46, p. 209, n. 7. **Negligence,** 29 Cyc., p. 492, n. 52; p. 494, n. 58; p. 495, n. 60, 66. **Proximate Cause,** 32 Cyc., p. 745, n. 77. **Trial,** 38 Cyc., p. 1543, n. 67.

Appeal from Circuit Court of City of St. Louis.—*Hon. Franklin Miller,* Judge.

AFFIRMED.

*Hay & Flanagan* and *Hensley, Allen, Moore & Fitch* for appellant.

(1) The evidence adduced by plaintiff sufficed to make out a case of actionable negligence against the defendant. When defendant brought to and kept upon its premises high and dangerous explosives, it was its duty to use the highest degree of care, the utmost caution and diligence, as to the care and custody thereof, in order to restrain or confine such dangerous agency. It was clearly negligence on defendant's part to leave such highly dangerous explosives, attractive to youths, lying exposed in a dilapidated open shed on its premises, where boys were in the habit of coming with defendant's knowledge and acquiescense; making defendant liable for the injury to plaintiff which naturally and proximately resulted from such negligence when the explosive in question was taken from defendant's premises, where boys were in the habit of coming with defendant's was caused to explode in plaintiff's presence. Diehl v. Fire Brick Co., 299 Mo. 641; Olsen v. Inv. Co., 58 Wash. 151; Clark v. Powder Co., L. R. A. 1915E, 479; City of Lubbock v. Bagwell, 206 S. W. 371; Juntti v. Min. Co., 119 Minn. 518, 42 L. R. A. (N. S.) 840; Akin v. Eng. & Machine Co., 48 Wash. 98; Gerber v. Kansas City, 304

Mo. 157; Vills v. Cloquet, 119 Minn. 277; Crabb v. Wilkins, 59 Wash. 302; Moore v. Light, Heat & Power Co., 163 Mo. App. 266; Sandeen v. Tschider, 205 Fed. 252; Mattson v. Minnesota Ry. Co., 70 L. R. A. 503; Powers v. Harlow, 55 Mich. 515; Nelson v. McClellan, 31 Wash. 208; Harriman v. Railroad, 45 Ohio St. 11; Travell v. Bannerman, 75 N. Y. Supp. 866; Mathis v. Granger Mining Co., 85 Wash. 634; Cincinnati Ry. Co. v. Padgett, 158 Ky. 301; Eckart v. Kiel, 123 Minn. 114; Miller v. Chandler, 168 Ky. 606; Barnett v. Cliffside Mills, 167 N. C. 576.    (2)   The evidence adduced by plaintiff fully warrants the finding that the negligence of the defendant was the proximate cause of plaintiff's injury.   The act of Schneider, in taking the cap and fuse from the quarry to the lot where the cap exploded, and the act of Kaufmann in lighting the fuse and placing it in the cap, did not break the causal connection between defendant's negligence and plaintiff's injury; but were, at most, concurring acts of negligence.   Diehl v. Fire Brick Co., 299 Mo. 656; Olsen v. Inv. Co., 58 Wash. 151; City of Lubbock v. Bagwell, 206 S. W. 371; Vills v. Cloquet, 119 Minn. 277; Moore v. Light Co., 163 Mo. App. 266; Mathis v. Mining Co., 85 Wash. 642; Clark v. Powder Co., 94 Kan. 268.

*Watts & Gentry* for respondent.

(1)   There was no evidence tending to show that any person, acting in the scope of his employment as a servant of the defendant, placed and left the box of dynamite caps where Schneider found the same. Lioni v. Granite Co., 149 N. E. 147; C. & O. Ry. Co. v. Rogers, 237 S. W. 18.   (2)  The act of leaving the dynamite caps in the shanty was not an act of negligence, in view of all the circumstances surrounding the leaving of the same at that place.   The shanty where the caps were found was more than a hundred feet below the surface of the ground, far removed from any public street, and at a place where the plaintiff and his companions had no right whatever to go.   Therefore, the defendant was not legally liable, even if the placing of the caps at that point was done by the defendant and was careless.   The sole duty to a trespasser or a bare licensee (and plaintiff was a trespasser) is not to willfully injure him after his presence is known.   He takes the premises as he finds them, and cannot recover for injuries sustained because of the dangerous condition of the premises or the presence of dangerous objects there, except in such cases as those where trespassers are expected and spring guns or traps are deliberately set for the purpose of inflicting injury upon them.   Kelly v. Benas, 217 Mo. 1; Glaser v. Rothschild, 221 Mo. 184; Barry v. Corn Assn., 106 Mo. App. 358; Shaw v. Goldman, 116 Mo. App. 332; Straub v. Soderer, 53 Mo. 38; Davis v.

Ringolski, 143 Mo. App. 364; Berry v. Hemp & Co., 191 S. W. 1038; Roe v. Ind. Packing Co., 203 Mo. App. 11; Rollo v. Cons. Co., 236 S. W. 632; United Zinc Co. v. Britt, 258 U. S. 268. Defendant could not be required to foresee that it would be likely or reasonably probable that young men would carry dynamite caps away and play with them in a reckless manner as Schneider and Kauffman did. A bare possibility of such an occurrence would not make defendant liable. Stone v. Boston & Albany Railroad, 171 Mass. 536. (3) The defendant cannot be held liable on the theory that it negligently permitted dangers peculiarly attractive to children to exist upon its premises. Plaintiffs have sometimes been permitted to recover under the doctrine of the turntable cases, but that doctrine applies at best only in cases where very young children are injured. It can have no application to a case where young men who were almost old enough to be voters (like Schneider, Kauffmann and plaintiff and his companions) were involved. There was no causal connection between the leaving of the dynamite caps in the shanty at the bottom of the quarry, far removed from any place where the public had a right to be, and the injury to the plaintiff, because a person of mature years, education, experience, discretion and judgment (Schneider) deliberately stole one of the caps and carried it far away from the defendant's premises and subsequently turned it over to another person (Kauffman), who was almost of full age (lacking but seven months), and he negligently exploded the cap, thus inflicting injury upon the plaintiff. In some cases some of the courts have held defendant liable where very young children, who have not arrived at years of discretion, stole some dangerous objects and carried them away and caused injury; but many other courts hold to the rule that even in cases where young children steal such objects, the action of the child who thus trespasses and commits larceny and subsequently sets off an explosive is the proximate cause of the injury and completely breaks the causal connection between the leaving of explosives or other dangerous substances in an unguarded condition and the happening of injury. This is doubly true where the person committing the trespass and the theft is not a child of tender years, but is old enough to know the difference between right and wrong, as Schneider did, and where, with the knowledge that stealing was wrong (which he admitted he had, he being an experienced Sunday school scholar and crap shooter), he stole the cap, and another person (Kauffman), still older, negligently and deliberately exploded the same. The natural and continuous sequence was broken, hence, that proximate cause was not the leaving of the dynamite caps in the quarry. Kane v. Railroad, 251 Mo. 27; Jaquith v. Plumbing Co., 251 S. W. 91; Thornton v. Ionia Fair Assn., 200 N. W. 958; Kidder v. Sadler, 103 Atl. 159; Hale v. Pac. Tel. Co., 183 Pac. 280; Stone

v. Railroad, 171 Mass. 356; Bradley v. Thompson, 223 Pac. 572; King v. Smart, 240 Mass. 574; Flaherty v. Metro. Stations, 196 N. Y. Supp. 2; Horan v. Town of Watertown, 104 N. E. 464; Nicolosi v. Clark, 147 Pac. 971; Afflick v. Bates, 21 R. I. 221; Perry v. Lime Co., 219 N. Y. 60; Hall v. Tel. Co., 214 N. Y. 49; Peetz v. City of Brooklyn, 10 App. Div. 382.

LINDSAY, C.—At the close of plaintiff's evidence the court gave a peremptory instruction in the nature of a demurrer to the evidence, offered by defendant, and the plaintiff took an involuntary nonsuit. His motion to set aside the nonsuit was denied, and the appeal is from the order of denial.

The suit is one for damages for injuries sustained by the plaintiff by the explosion of a dynamite cap in the hands of one Kauffman, while the plaintiff, Kauffman, and an associate of theirs named Schneider, were standing upon a terrace or vacant lot near a drug store at about seven o'clock in the evening, of Sunday, May 22, 1921. At the time, the plaintiff was between twenty and twenty-one years of age, and Kauffman was of about the same age. Schneider was a few months more than eighteen years of age.

The circumstances leading up to the plaintiff's injuries are as follows: The defendant owned and operated a quarry, situated north of Ashland Avenue and east of Euclid Avenue, in the city of St. Louis. East of defendant's quarry was another large, abandoned quarry. There was a wire fence on the south and west sides of defendant's quarry, and on the north side were buildings used by defendant in its operation of the quarry. Among these was a concrete building wherein the defendant kept the explosives used in the blasting operations. Defendant's quarry was about 100 feet deep. Its extent east-by-west was about 250 feet. There was a pool of water of no great size at the bottom, to which young men and boys sometimes went for swimming. There was a large pool in the abandoned quarry to the east.

On the morning of the Sunday in question, the plaintiff, Kauffman, Schneider and a number of others were near the quarry at a place where it appears a craps game was going on. The plaintiff, Kauffman, Schneider and some others, left the craps game and went down into the defendant's quarry. To reach the bottom of the quarry they went down a series of four ladders, upon the east side of the wall of the quarry. The first ladder reached from the surface down to a ledge; thence, another ladder to a second ledge, and so on until the bottom was reached. The ladders stood nearly upright. Not far from the pool that has been mentioned, stood an old shed, which had a roof, but was open on two sides. Schneider and one or two others removed their clothes and went into the pool, but the plaintiff did not.

Schneider left his clothes in the shed, and upon his return from the pool and while dressing, he saw lying upon a 2 by 4 piece of timber in the shed, a tin box, and upon the box there lay a piece of fuse 15 or 20 inches long. The 2 by 4 timber extended across the shed, under the roof, and was several feet above the ground. The tin box was about 3 or 3½ inches in length and breadth, and about two inches deep. It was closed, but the top or lid was not fastened. There was no warning sign upon or about it. Schneider removed the lid of the box, and found therein a number of dynamite caps. He took out two of the caps, and put them and the piece of fuse into his pocket. He said nothing to his companions at that time, about finding the caps and fuse. He and the others left the quarry and dispersed to their several homes. This was at about twelve o'clock. However, after climbing out of the quarry, Schneider told Kauffman of what he had found, and showed him the caps and a fuse, and Kauffman suggested that they hide them, and have some fun with them that evening. Accordingly they took the caps and fuse to the drug store some two or three blocks distant from the quarry, and hid them in the awning in front of the store. At about seven o'clock that evening Schneider and Kauffman returned to the drug store, and took the caps and fuse from the awning, and went upon the vacant ground near by. Schneider wanted to light the fuse himself, but had no match, and Kauffman took it from him and lighted one end of it, and it smoldered or burned slowly. About this time the plaintiff came upon the scene, and seeing Schneider and Kauffman, his curiosity was aroused, and he went up to them. It appears that plaintiff, before he went up near Schneider and Kauffman, did not know what they had or what they were trying to do, and he said he did not then know it was a dynamite cap, or what such a cap was. Soon after plaintiff came up, and while he was standing within three feet of Kauffman and Schneider, Kauffman put the lighted end of the fuse into the open end of a cap. Kauffman said he did this with the idea of extinguishing the fire. The cap immediately exploded, and Kauffman lost the thumb and forefinger of his right hand, and plaintiff received injuries to his eyes which made him practically blind. There was no direct evidence to show when or how the fuse, and the tin box containing the caps, came to be in the shed. The shed was about twenty feet from the pool. While the quarry had been regularly operated, there had not been any blasting recently very near the shed. It was admitted that the defendant in its operations used fuses and dynamite caps of the character of those contained in the box.

Schneider testified that he had been to school.until he was in the eighth grade, and then quit school and had been at work as a manifest clerk for the Terminal Railroad for four years before the accident. He had heard of dynamite and blasting, and had seen motion pictures

of men lighting fuses to set off bombs, and dynamite charges, but he said he did not know what the caps were for. Kauffman had been in school in St. Louis until he was fourteen years old, and had then gone to work, but he said also he went to the high school two years. He knew what dynamite was for, and also had seen motion pictures of men setting off bombs and charges with fuses, by lighting the fuses. He said he knew that dynamite caps were used in blasting and knew the fuse in question was a dynamite fuse, but said he did not know this cap was dangerous, and thought it was "a safety device or something on the fuse when they would light it by mistake—when they would want to put the fuse out." He said that when he and Schneider put the fuse in the awning it had a cap on each end, but that when they took it out of the awning there was only one cap on the fuse. That was the one he took off and put on the end of the fuse which he had lighted.

The plaintiff and the others had lived for a long time at no great distance from the quarry, and knew that blasting operations had been carried on in it. Schneider said he had been to church that morning before going over to the craps game. On his cross-examination he said he knew when he took the caps and fuse that he was taking something which did not belong to him; that he was not paying for it, and that he had no business with it. He and Kauffman said they wanted to light the fuse to see what it would do.

Upon demurrer to the evidence the plaintiff is entitled to the benefit of every inference in his favor which reasonably can be drawn from the evidence. Since the fuse and box of caps were found in the shed at the bottom of defendant's quarry, and defendant theretofore regularly had been using fuses and caps of that kind in its quarry and there was no evidence that any other company or person had used such explosives in that quarry, the inference could be drawn, reasonably, that the fuse and caps in question were in the place where they were found, through an act of defendant or its servants. [Gerber v. Kansas City, 304 Mo. 157.] It is not urged here by defendant that the plaintiff was guilty of contributory negligence.

Counsel for plaintiff, while they designate as "attractive to youths" the dangerous explosives left in the open shed on defendant's premises, where as defendant knew, boys were in the habit of coming, yet say the "case is not predicated merely upon the 'attractive nuisance' or 'turn-table' theory." The contention is there was a violation of the duty defendant owed to plaintiff and the public in general, to confine the dangerous agency. There are cited in the brief for appellant, cases, some from this and many from other jurisdictions, as supporting the contention made that it was clearly negligence on defendant's part to leave caps, "attractive to youths" lying in an open shed on its premises, where boys were in the habit of coming

with defendant's knowledge; and that defendant is liable for the injury to plaintiff, which naturally and proximately resulted from such negligence when the explosive in question was taken from defendant's premises by a boy, who did not know of its dangerous character, and it was caused to explode in plaintiff's presence. Another line of cases is cited under the contention that the act of Schneider in taking the cap and fuse from the quarry to the place where the cap exploded, and the act of Kauffman in lighting the fuse and placing it in the cap, did not break the causal connection between defendant's negligence and the plaintiff's injury. In most of the cases cited the person who found the explosive alleged to have been negligently exposed, was a child of tender age, who, finding the explosive, also handled it, and was the person injured. In some, the question of proximate cause of the injury was raised upon the act of a young child, where a third person was injured, the inquiry being whether the act of the child was an independent, efficient cause, intervening, and producing the injury.

"It may be stated as a general principle of law that one who has in his possession or under his control an instrumentality exceptionally dangerous in character is bound to take exceptional precautions to prevent an injury being done thereby." [20 R. C. L. 51.]  "The test of liability is the power of a prudent person to foresee injury, and this question, of course, depends on the particular circumstances of the case, including the nature of the instrumentality, the time, the place, and the status of the person injured. Under almost all circumstances, however, there is great danger and a commensurate duty of care in respect of such instrumentalities as explosives," [20 R. C. L. 52.] "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their ability to foresee and avoid the perils that they may encounter." [20 R. C. L. 37.]

There is little disagreement as to the general principles governing the question of what constitutes proximate cause, but difficulty may arise in a given case, and in one wherein is involved the question whether the act of a child or young person may be an efficient intervening cause, between the negligence of one person and an injury to a third person, so as to break the chain of causation, and relieve the former from liability for his negligent acts, because the answer to the question must turn upon the application of the general test to the facts of the particular case.

The doctrine of the "attractive nuisance" or "turn-table" cases can hardly be extended so as to apply to the facts in this case. Schneider, who discovered the box of caps was not a young child, but was 18½ years old. Kauffman was two years older than he. Both of them knew the place was a quarry, where blasting had been going on for a long time. Both knew something of the use of a fuse,

at least they had seen the pictures showing fuses used in the causing of explosions. The caps were in a closed box which Schneider opened, and his testimony shows he knew he was appropriating something which belonged to another and which he had no right to take. With him it was not merely the inclination of a child to play with an attractive object coming in his way, but rather a wrongful appropriation consciously made of things which, as he expressed it, he had "no business with." The doctrine of the "turn-table" and "attractive-nuisance" cases is applied only to young children. [Hight v. Bakery, 168 Mo. App. 431.] This court has said the doctrine is not to be extended. [O'Hara v. Laclede Gas Co., 244 Mo. 395.] Holding as we do, that under the evidence the question whether the box of caps was in the shed through an act of defendant, was one for the jury, certain general principles applicable to defendant and his conduct on that theory may be stated. "To constitute proximate cause creating liability for negligence the injury must have been the natural and probable consequence of the negligent act." [29 Cyc. 492.] Also, "In addition to the requirement that the result should be the natural and probable consequence of the negligence, it is commonly stated that the consequence should be one which in the light of attending circumstances an ordinarily prudent man would reasonably have foreseen it might probably occur as the result of his negligence." [29 Cyc. 493.] Again,—"If the injury could not have been reasonably anticipated as the probable result of an act of negligence, such act is either remote cause or no cause of injury." [29 Cyc. 495.] And further—"Where an act is negligent it is not necessary to render it the proximate cause that the person committing it could or might have foreseen the particular consequence or precise form of the injury, or the particular manner in which it occurred, if by the exercise of reasonable care it might have been foreseen or anticipated that some injury might result." [29 Cyc. 495.]

The Missouri cases cited by counsel for plaintiff should be noticed. In Diehl v. Green Fire Brick Co., 299 Mo. 641, the plaintiff was a boy seven years of age, and found the explosive caps while he was in company with his brother, nine years of age. The caps were lying on the ground upon or near a right of way, where the plaintiff and his brother were accustomed to pass in carrying meals to their father, who was employed by the defendant. Defendant knew this, and knew that others were accustomed to pass along that way. In that case the plaintiff and his brother were not only children of tender age, but the circumstances were such as would give rise to the belief on their part that the caps were something which had been abandoned or thrown away. The negligence in leaving dangerous explosives so exposed, and in such a place was apparent. In that case there was also considered the fact that the plaintiff showed

one or more of the caps to his mother, who looked at them and returned them to the plaintiff. Her testimony was that she knew nothing about their dangerous character. It was held that her returning them to the plaintiff was at most only concurring negligence.

In Gerber v. Kansas City et al., 304 Mo. 157, the plaintiff was twelve years of age. The cap with a fuse attached was partly buried in loose dirt which had been thrown up immediately in front of plaintiff's home. Several inches of the fuse showed outside of the pile of earth. In that case, too, the fuse and cap would be said to have the appearance of having been discarded or thrown away. As in the Diehl case, the act of taking the cap was one innocently done by a child.

In Moore v. Jefferson City Light, Heat & Power Co., 163 Mo. App. 266, the explosive, being in possession and charge of a servant of the defendant on a certain evening, was placed by him under the porch of plaintiff's house, to remain until the next morning. This was without the knowledge of the plaintiff. The dynamite was exploded and injured the plaintiff, when her son, a little boy, was shooting roman candles in front of the porch, and near to the dynamite which had been placed under the porch. It was argued that the firing of candles by the boy was the proximate cause of the injury, but the holding was against that contention. The controlling facts in that case were, that the placing of the dynamite under the porch by defendant's servant was done without the knowledge of the plaintiff, was in itself a trespass upon the plaintiff's property, and was gross negligence; nor did the boy know of its presence there. The placing of the dynamite where it was, was a culpable act, and the predominating cause of the injury which resulted through the unwitting act of the boy.

Of the cases cited from other jurisdictions where there were injuries from explosions resulting from the act of the plaintiff or of some one in the company of the plaintiff, the persons involved in nearly all, were young children. In Olson v. Gill Home Investment Co., 58 Wash. 151, the party concerned was a boy of thirteen years. In City of Lubbock v. Bagwell (Tex. Civ. App.), 206 S. W. 371, it was a child of nine years. In Juntti v. Oliver Iron Mining Co., 119 Minn. 518, it was a child of six years. In Akin v. Bradley Eng. & Machine Co., 48 Wash. 98, it was a child of eleven years. In Vills v. City of Cloquet, 119 Minn. 277, it was a child of six years. In Sandeen v. Tschider, 205 Fed. 252, it was a child of eleven years. In Mattson v. Minn. & N. W. Railroad Co., 70 L. R. A. 503, it was a child of nine years. In Powers v. Harlow, 53 Mich. 507, it was a child of eight years. In Eckart v. Kiel, 123 Minn. 114, it was a boy of fourteen years. In Miller v. Chandler, 168 Ky. 606, it was a child of 8½ years of age. In Barnett v. Cliffside Mills, 167 N. C. 576, it was a child of eleven years. In others the parties were referred to as children.

In many of these cases the explosive substance was so exposed or in such a place as might indicate it was something abandoned or thrown away. In nearly all of them it was something upon or near the surface of the ground, and readily accessible to young children. In very few of them, considering the age of the child or children involved, and the circumstances under which the object was found, did the circumstances indicate a consciously wrongful taking, or appropriation of the property of another.

It is proper to note somewhat the circumstances in the cases cited by counsel for plaintiff, to sustain their contention that the negligence of the defendant was the proximate cause of the plaintiff's injury, and that the act of Schneider in taking the caps and fuses from the quarry to the lot where it exploded and the act of Kauffman in lighting the fuse and placing it in the cap, did not break the causal connection between the defendant's negligence and plaintiff's injury. The Diehl case has been referred to. In Olson v. Gill Home Investment Co., 58 Wash. 151, a boy nearly fourteen years of age discovered a box, and in it some loose sticks of dynamite, stored by the defendant on a shelf in a toilet, which was situated only a short distance from two streets, and was within three blocks of a school house, and there were also caps and fuses stored in the toilet. Another boy of about the same age had caps and fuses which were found in the toilet. Two or three boys, all about thirteen years of age, took one of the sticks of dynamite, and a cap and fuse, and undertook to explode the dynamite. The plaintiff in the case was injured by an explosion, caused when one of the boys undertook to pry the cap away from the stick of dynamite to which he had attached it. It does not appear that the plaintiff in the case had anything to do with the finding and taking of the explosives, or the attempt to use them. The outstanding facts in the case were that these explosives were left lying upon a shelf in the toilet; that the door of the toilet was not kept locked; that it was near a school house and very near two streets, and the boys occasionally went to the toilet, as the defendant knew. All of the boys concerned were under fourteen years of age.

In City of Lubbock v. Bagwell, 206 S. W. 371, the plaintiff was a boy nine years of age. Near his home, the defendant was constructing a sewer, and was using explosives. At the end of the day's work, the foreman placed a box of dynamite caps on the plate of a shed or chicken house, belonging to the father of the plaintiff, and abutting upon an alley. The caps were in a red box, unlocked, and were placed on a plate in the shed about five feet from the ground. While the boy was playing near the shed, the box attracted his attention, and he climbed up and took from the box two dynamite caps. He took them home, and on the next evening undertook to solder them

together by using a rod of iron which he had heated, and in doing so the cap exploded and injured him. The only intervening cause there urged was that while the plaintiff was playing with the caps near the fire, his father and mother sat in the room where he caused the cap to explode. However, it is stated that at said time they were engaged in reading and did not know what the boy had, or what he was trying to do. The case is, in its facts, very similar to the Diehl case.

In Vills v. City of Cloquet, 119 Minn. 277, the plaintiff was a boy six years of age. The defendant had been using a stone crusher upon a vacant lot for the purpose of crushing stone for street improvements. Its tool house stood about forty feet back from a road. After the work was finished the tool house was left without supervision and it was in a condition where it was easy for boys to enter it. The defendant had left explosive caps in the tool house. Some boys who had been in the tool house and procured caps, threw some of them out at a companion. Two or three days later the plaintiff, playing with some other boys near the tool house, found one of the caps. It was bright and attractive and he proceeded to hammer it with a stone, which caused an explosion and his injury. The holding was that defendant ought to have anticipated that children might enter the tool house or shed where the explosive caps were left exposed, get into the box of caps, and, leave some of them around where they might be found by other children and that injury might result.

In Mathis v. Granger Brick & Tile Co., 85 Wash. 634, the plaintiff was a boy eleven years of age. The defendant had been using explosives, and kept them in an enclosure made by placing a wooden door in front of an excavation in a hillside. The door was never locked, but had a danger sign upon it. In the immediate vicinity, petrified wood had been found, and children and others were accustomed to frequent the place in search of it. The explosive caps which inflicted the injury in that case, were found in the bucket of an elevator used for hoisting soil from a near-by pit. They were found by boys, and a cap fell out of the pocket of one of the boys while playing on the school ground, a day or two after they were found. The plaintiff picked up the cap which fell from the pocket of the other boy. He was afterward injured while picking at it with a hairpin. In that case also the plaintiff's mother knew he had the cap, but there was no evidence that she knew anything about its character.

In Clark v. Dupont Powder Co., 94 Kan. 268, the agent of the defendant after shooting a well, had left about a quart of the explosive, solidified glycerine, lying near the well. As stated in the opinion, one Joe McDowell, son of the owner of the farm whereon the well was, and who was employed by the contractor who was bor-

ing the well, saw the explosive, and fearing it would cause injury carried it home with him at the dinner hour. His mother protested against keeping it about the premises, and he took it to an abandoned grave-yard on the farm at some distance from the house. The grave-yard was small, containing only three or four bodies, and was surrounded by a stone fence. He placed the dynamite within the enclosure in a crevice near the ground, and partially covered it up. It lay there for two years, when it was found by some children, one of whom was the injured plaintiff, who did not know its nature. After handling it to some extent they left it. On the same evening one of them described it to his uncle who expressed the opinion that it was some sort of tallow and not dynamite. On the following day the plaintiff and his brother and another boy being out hunting, returned to the grave-yard and one of them picked up the article and hit it on a rock for the purpose of breaking off a piece to take home, and the explosion resulted.

Under their contention that the natural and continuous sequence, necessary between defendant's negligence and plaintiff's injury, was broken, and that the leaving of the caps in the quarry was not the proximate cause for plaintiff's injury, counsel have cited numerous cases: Thornton v. Ionia Fair Assn., 200 N. W. 958; Kidder v. Sadler, 103 Atl. 159; Hale v. Pacific T. & T. Co., 183 Pac. 280; Stone v. Railroad, 171 Mass. 536; Bradley v. Thompson, 223 Pac. 572; King v. Smart, 250 Mass. 174; Flaherty v. Metro Stations, Inc., 196 N. Y. Supp. 2; Horan v. Watertown, 104 N. E. 464; Nicolosi v. Clark, 147 Pac. 971; Afflick v. Bates, 21 R. I. 281; Perry v. Rochester Lime Co., 219 N. Y. 60; Hall v. N. Y. Telephone Co., 214 N. Y. 49; Beetz v. City of Brooklyn, 10 App. Div. (N. Y.) 382. The most of the cases cited here by counsel for both sides, and other cases, are cited in the extensive annotations to be found in 43 A. L. R. 434, and the annotation in 8 A. L. R. 1250. The annotation in 8 A. L. R. 1250, is upon the subject of the intervening act of a child as affecting the question of proximate cause of damage to the person or property of a third person by fire or explosion. It is stated that the answer to the question is one which turns upon the application of the test to the facts of a particular case. The test itself adopted is that stated in 22 Ruling Case Law, page 133: "Was the intervening efficient cause a new and independent force, acting in and of itself in causing the injury and superseding the original wrong complained of, so as to make it remote in the chain of causation, although it may have furnished a condition by which the injury was made possible." After quoting the foregoing it is said: "The majority of the cases treat the question from the viewpoint as to whether or not the intervening act of the child must or ought to have been foreseen, recovery not being

barred providing the act was reasonably to be expected, and the contrary where it could not have been reasonably expected.''

We have found no case closely like this upon the facts, among the cases cited by counsel in their briefs, or among those cited in the extended annotations to which we have referred. They are nearly all cases in which the parties immediately concerned were children—persons under the age of fourteen years. In many of them, where the child was very young, and the explosive agency was left as something abandoned, and readily accessible to the child, and the child was injured by his own experiment with the explosive, there is little or no discussion of the question of proximate cause. In some of them the doctrine was applied that the child was a trespasser upon the premises of defendant, to whom the defendant owed no duty except the negative one not to injure him or wantonly or recklessly expose him to danger. Kidder v. Sadler, 117 Me. 194; Nicolosi v. Clark, 169 Cal. 746; Hale v. Pacific Telephone & Telegraph Co., 42 Cal. App. 55, are of this class.

In the last named case an eight-year-old boy entered a storehouse of defendant, pried open a wooden box and removed dynamite caps. He gave some of them to another boy seven years old, who was injured by firing one of them with a toy pistol. Neither of them knew the dangerous character of the caps, but the boy who took them admitted knowing it was wrong to take them as he did. It was held that the negligence of the defendant was not the proximate cause of the plaintiff's injury, since the defendant was not bound to anticipate the wrongful act of the older boy, and that his connection with the plaintiff's injury was to be deemed as that of an adult.

Other cases of like character are among those cited in the brief for defendant. In other of the cases, in considering that the child was a trespasser, an exception was made because of the highly dangerous character of the explosive to which he had access, and the consequent commensurate duty of the defendant, to carefully guard young children from injury from such highly dangerous agencies, even though the child might be a trespasser. In this class of cases are Barnett v. Cliffside Mills, 167 N. C. 576, and Fisher v. Burrell (Ore.), 241 Pac. 40, and many other cases which might be mentioned, recognizing the exception.

The children involved in the cases first mentioned were of such a tender age so far below the ages of Schneider and Kauffman, that the application of the doctrine, based on the fact that such children were trespassers, may be somewhat extreme. It is not necessary to go so far in this case. But, the cases which gave to the plaintiffs, children of tender age, the benefit of the exception, although they might be trespassers, are not close in their application to the facts in this case, if the ages of Schneider and of Kauffman are to be considered

and given due weight, and it is further considered that Schneider being neither invited nor forbidden, went into the quarry for his own amusement, and that in opening the box and taking away the caps, he was, in that act at least, clearly a trespasser and conscious wrongdoer. There is evidence that among those who went down into defendant's quarry there were boys younger than Schneider, but there is no evidence that very young children did so. The testimony is that those who went down into the quarry, went for the purpose of swimming in the pool, and they always went down the ladders, a distance of more than 100 feet.

While the plaintiff here had no part in taking the caps, and did not know they were taken, and can in no sense for the purposes of determining the issue here be regarded as a trespasser, yet the trespass of Schneider and the other acts of Schneider and Kauffman intervened between the negligence of the defendant and the plaintiff's injury, as independant and efficient causes in producing the injury.

The definition of the term proximate cause, several times cited with approval by this court (Dickson v. Railway, 124 Mo. l. c. 149; Kane v. Railroad, 251 Mo. 27; Jacquith v. Fayette R. Plumb, Inc., 254 S. W. 91) is as follows: "The proximate cause of an event is that which, in a natural and continuous sequence, unbroken by any new cause, produces the event, and without which the event would not have occurred." Under all the circumstances shown we conclude that the essential failure of the plaintiff's case is in the intervention between defendant's alleged negligence, and plaintiff's injury, of the acts of the persons named, other than defendant, not reasonably to be anticipated by defendant, and of a character which made the original negligent act of defendant remote, and superseded it. The act of Schneider was not that of a child, or one of merely concurring negligence, but was the act of a person nearing maturity, moving independently, and conscious of wrong-doing, and through his association with Kauffman and the act of the latter, there was an efficient intervening cause, which defendant was not bound to anticipate, and the order of the trial court overruling the plaintiff's motion is affirmed.

*Seddon, C.,* dissents.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.