## DUTTON v. ALLIGATOR CO.
### No. 12580.

District Court, E. D. Missouri, E. D.
Nov. 2, 1938.

Joseph Goodman, of St. Louis, Mo., for plaintiff.

Claude O. Pearcy, of St. Louis, Mo., for defendant.

COLLET, District Judge.

This cause has been submitted to the jury and a verdict of $6,000 returned, which verdict was received but the entry of judgment thereon deferred. At the close of the evidence offered in behalf of plaintiff, defendant formally offered an instruction in the nature of a demurrer. The request for an instructed verdict was renewed at the close of all the evidence. A ruling on both of these requests was at the time deferred and reserved by the court. The cause was submitted to the jury upon the question of whether defendant was guilty of negligence in placing buckets containing naphtha on the ground near an incinerator which was located in the rear of its factory building and where children who constantly played and built fires on an adjacent vacant lot could obtain ready access to it. The further question was submitted as to whether burns received by a child from accidentally spilling a can of this naphtha on an open fire was the direct result of the manner and place at which the naphtha was kept.

If plaintiff may recover it must be upon the theory that the buckets of naphtha were so attractive to children that defendant should have realized that children would likely trespass upon its property and be injured by meddling with it. Although plaintiff disclaims an intention to base liability upon the doctrine of the turn table cases, yet I do not understand that the theory of the rule is renounced by plaintiff for all purposes. On consideration of the demurrers it may be assumed (because the testimony favorable to plaintiff so showed) that defendant knew children were almost constantly playing on the adjoining uninclosed vacant lot and that they frequently built fires there in their play. For the same reason it is accepted as an established fact that the naphtha was constantly kept by defendant on its own property near the incinerator located on defendant's lot. The conclusion may also be adopted that defendant had a right to keep it there. The difficult question lies in the determination of the duty, if any, defendant owed to the public regarding the manner in which it should be kept.

The general rule is to the effect that a property owner owes no duty to exercise any degree of care for the safety of trespassers "save to forbear inflicting upon him a wanton or malicious injury." Buddy v. Railroad, 276 Mo. 276, loc. cit. 286, 207 S.W. 821, loc. cit. 824. Plaintiff was not injured on defendant's premises but on the adjacent lot as a result of the accidental precipitation into an open fire of two-thirds of a small can of naphtha taken from the buckets on defendant's premises without permission by two other boys about eleven years old and deposited by them near the fire. Therefore, the question is not, strictly speaking, the duty of defendant to trespassers while on defendant's property, but its obligation, if any, to prevent an injury resulting from an unauthorized removal of its property.

The general rule further appears to be that a property owner owes no duty to anticipate an unlawful trespass and is not required to guard against the possibility of injuries resulting therefrom.

But both general rules are subject to the exception created by the doctrine of "attractive nuisance" or so-called "turn table cases" to the effect that an infant of tender years may not be treated as a trespasser where the circumstances are such that he is by natural instinct attracted to the premises which he invades.

The cases which declare this doctrine do not suggest that the general rule of negligence is changed by it but simply hold that where the facts justify application, the "attractive nuisance" doctrine takes the child out of the classification of a trespasser, places him in the role of an invitee, and surrounds him with the protection accorded invitees by the general law of negligence applicable to the latter class. It is no violation of the prohibition against the extension of the "attractive nuisance" doctrine (Kelly v. Benas, 217 Mo. 1, loc. cit. 11, 116 S.W. 557, 20 L.R.A.,N.S., 903) to apply it in determining defendant's duty to prevent a trespass to personal property, consisting of its removal.

Was defendant under any obligation whatever to prevent the removal of the naphtha by the children playing on the vacant lot? The answer must be in the negative unless the defendant knew or is charged with knowledge of the attractiveness of this fire building material. The testimony is that children almost constantly played on the adjacent vacant lot and almost daily built fires in plain sight from defendant's premises. The jury was warranted in concluding from this testimony, coupled with the direct statement of one of defendant's employees to the effect that he frequently noticed the children playing on the lot, that defendant knew any substance suitable for starting or making fires burn would attract these children. The jury was further warranted in concluding from the fact that defendant had, for a long period of time, used the contents of the buckets in building fires in the incinerator, that the defendant knew the children realized the adaptability of this substance for building fires, hence, the application of the attractive nuisance doctrine was warranted. Its application resulted in the boys who took the naphtha being placed in the catagory of invitees and required the submission of the case to the jury under the rule of law applicable to invitees.

The following interrogatories were propounded to the jury:

"1. Under all the facts and circumstances in evidence, was the defendant negligent in placing the buckets and their contents where the evidence shows they were kept?"

"2. If the above question be answered in the affirmative; do you believe that a reasonably prudent person should, under all the circumstances shown by the evidence, have foreseen that an accident such as this might reasonably be expected to occur?"

Both questions were answered "yes".

"Negligence" had been elsewhere defined as meaning a failure to exercise ordinary care. Therefore, by answering "yes" to the first question, the jury found in effect that in view of the fact defendant knew the children were almost constantly building fires on the adjoining vacant lot (not separated in any manner from defendant's lot), and that the children knew the contents of the buckets were suitable for that purpose, defendant failed to exercise ordinary care in preventing the taking of the naphtha. The naphtha was probably not attractive to the children absent an opportunity to use it for building fires, but that opportunity and the likelihood of its being exercised were both facts which the jury were warranted in assuming the defendant knew. Consequently, the knowledge of the attractive-

ness of the naphtha must be charged to defendant.

The question of due care being one properly submitted to the jury, and obviously considered by it, the next question to be determined was whether defendant's failure to exercise ordinary care was the proximate cause of the injury. It was not the proximate cause unless defendant with reasonable prudence in view of all the facts should have foreseen that an accident of this kind might reasonably be expected to occur. See Kennedy v. Independent Quarry & Const. Co., 316 Mo. 782, 291 S.W. 475. The answer to the second question of the interrogatories demonstrates that this question was considered and gives the jury's conclusion on that point.

The question of proximate cause, like that of due care, should not have been submitted to the jury had it not been that the "attractive nuisance" doctrine removed the two boys from the classification of trespassers when they took the naphtha, took from defendant the protection of the rule relieving it of any responsibility to anticipate injury from a trespass on its property, and imposed a duty to anticipate and guard against accidents which might reasonably result from keeping the naphtha at the place and in the manner it was kept.

The motions for directed verdict are overruled and judgment is directed to be entered on the verdict.